**Constance J. GIANELLA, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

**No. 77–1087C(A).**

United States District Court, E. D. Missouri, E. D.

Jan. 9, 1979.

---

Alan J. Steinberg and Darold E. Crotzer, Jr., Clayton, Mo., for plaintiff.

Robert D. Kingsland, U.S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM–OPINION

HARPER, District Judge.

Constance J. Gianella has filed an application for judicial review of the final decision of the Secretary of Health, Education and Welfare, which has denied her disability benefits. These proceedings are governed by Title II of the Social Security Act, as amended, 42 U.S.C. § 401, et seq.

Plaintiff filed her original application for disability benefits on August 3, 1976. This application was denied on October 7, 1976, then reconsidered and denied again on November 24, 1976.

On May 2, 1977, at plaintiff's request, a hearing was held before a Social Security Law Judge, who again denied plaintiff's application on May 26, 1977. She requested further review by the Social Security Appeals Council, who affirmed the decision of the law judge on April 15, 1977. Sometime subsequent to the Appeals Council's action, the administrative record was misplaced and plaintiff was allowed to submit, during the interim, an additional medical report for the Appeals Council's consideration. However, on June 30, 1978, the Appeals Council again denied the plaintiff's application. This denial constitutes the final decision of the Secretary, which is appropriately appealable to this Court.

At the hearing, at which the claimant and one Dr. Boyd, a vocational expert, testified, claimant indicated that she was fifty-eight years of age, five foot-five inches tall and weighed approximately 140 pounds. She

indicated that she was born in Italy, where she worked at making textiles and leather goods after completing eight grades of education. She indicated she came to this country in 1954 and was a married woman.

In this country she operated a sewing machine at a tailoring company for about three months and then went to work for Universal Printing Company in November of 1958. There she operated a bindery until February of 1976.

She testified that she had a fall in her home in September of 1975, which incapacitated her for awhile, but that she returned to work in November of 1975, and worked until February of 1976. Since February, claimant indicated that she had been unable to return to her regular employment, her household work is limited, she only drives occasionally to do the shopping, is unable to stand for over an hour or to sit for over one-half hour without changing positions and is in constant pain, taking aspirin or bufferin; four to six tablets per day.

Dr. Thomas Boyd, a vocational expert, testified at the hearing, indicating that the claimant had a variety of transferable skills acquired from prior employment. In reply to a hypothetical assumption that plaintiff could perform light or sedentary work, which would allow her to change positions compatible with her standing and sitting problems, Dr. Boyd indicated that the plaintiff was qualified to work as a tracing machine operator, gluing and cementing or operating electric heat machines, all in the boot and shoe industry. He further indicated she could be a suture winder in the pharmaceutical industry, a capping operator in the bottling industry, a rivet machine operator in electronics or a bench press or grinder operator in a metal working establishment.

Dr. Boyd admitted that the claimant would be unable to perform any job if it was necessary for her to lay down periodically for fifteen minutes to one-half hour.

Based on the evidence adduced, the Social Security Law Judge made the following finding:

(1) Claimant meets the special earnings requirements for a period of disability and disability insurance benefits through the date of this decision.

(2) Claimant would not be precluded from working due to residuals from a back injury. She does not have an impairment of the lower back of such severity as to preclude certain types of substantial gainful activity.

(3) She would not be precluded from working due to pain.

(4) Claimant retains the physical and mental capacity to perform sedentary or light work not requiring prolonged sitting, standing or walking. She could work at sedentary or light jobs which would permit her to change positions from sitting to standing and standing to sitting at reasonable intervals.

(5) Considering the claimant's physical and mental ability, her age, education and work history, she would be able to do such jobs as tracing machine operator, gluer, cementer, sciving (sic) machine operator, electric heat sealing machine operator, suture winder, needle swager, inspector, automatic grinder machine operator, heat sealing machine operator, rivet machine operator, small bench drill press operator, and capping machine operator; and these jobs are present in significant numbers in the region where claimant lives and in several regions of the country.

(6) Claimant is not under a disability in that she was unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death or which have lasted or can be expected to last for a continuous period of not less than 12 months, at any time on or prior to the date of this decision.

Medical evidence received in claimant's case included reports from at least five doctors. Dr. J. Otto Lottes, M. D., exam-

ined the claimant in July of 1976. He found a painful coccyx and indicated that the disability therein should terminate in six to nine months.

Dr. Lottes reexamined the claimant in September of 1977 and found tenderness over the coccyx-sacral joint. He concluded that since this had been present for some eighteen months that it would likely be permanent and would make it difficult for the claimant to sit for long periods of time (Tr.113).

Dr. Charles Montani, M. D., the claimant's personal physician saw her first concerning this injury in November of 1975. He found a coccydynia of some two-three weeks duration. Lumbar spine x-rays were normal other than minimal osteoarthritic changes and some osteoporosis. She was referred to Dr. E. T. Dmytryk who placed her on physiotherapy at St. John's Mercy Medical Center where she underwent eleven treatments, culminating in dismissal on March 22, 1976. Dr. Dmytryk reported minimal improvement (Tr.90). Dr. Montani indicated that claimant re-injured her back in April of 1976, and was subsequently treated at his office with diathermy and injections of cortisone. Dr. Montani concluded by diagnosing plaintiff's complaint as coccydynia with a poor response to treatment (Tr.96–110).

Dr. John D. Kenney, M. D., examined the claimant on reference from Dr. Montani. He reported her subjective complaints related to her fall on the tail bone and resultant pain. On examination, he found claimant to be ambulatory and in no distress. She had a full range of motion of the lumbo sacral spine. She was able to stand on toes and heels with equal facility. She had a full range of motion of all joints of the lower extremities. Straight leg raising tests were negative and there was no gross motor, sensory, reflex or vascular change in the lower extremities. X-ray revealed no bone destruction, fracture or other abnormality. This report was dated November 10, 1976 (Tr.105).

An additional medical report was submitted to the Appeals Council while the case was under submission and covered an examination made on August 1, 1977 by one Robert W. Tatkow, M. D. Dr. Tatkow summarized fairly and accurately by stating:

Very little is found objectively but the patient continues to state that she is unable to work because she can't stand on the assembly line at work all day. This is a common complaint after this type of trauma and I believe that she would fair (sic) best by not returning to work. Prognosis for any improvement is guarded.

This is a typical low back fall case which presents little or no substantiating objective evidence, and yet is produces obvious pain to its owner. The district court's review is limited under the statute and the court has no right interfering in the Secretary's decision if it is, in fact, supported by substantial evidence. Plaintiff's attorney has competently briefed her position and has cited numerous pain cases which earned disability benefits. *Yawitz v. Weinberger*, 498 F.2d 956 (8th Cir. 1974), allowed disability for headaches, which were almost completely subjective in manifestation. We concede that *Yawitz* and numerous other cases have established that pain alone can support a claim for disability benefits. Further, we concede that there is no suggestion of plaintiff's malingering. Her work record prior to her fall was indeed steady, including eighteen years with her last employer.

On the other side of the coin, we are reminded by the government that the plaintiff has the burden of proving her entitlement to disability insurance benefits. *Timmerman v. Weinberger*, 510 F.2d 439 (8th Cir. 1975); *Heisner v. Secretary of HEW*, 538 F.2d 1329 (8th Cir. 1976). All of the claimant's medical examiners are in agreement in their diagnosis of claimant's coccydynia and resultant low back pain, however, none of the examining physicians are able to substantiate the positive existence of the low back pain with any objective findings. On the contrary, at least two of the physicians involved, commented on her dexterity of motion and lack of distress, during examination. Not one has unqualifiedly stated

that claimant is totally and permanently disabled.

▪ This Court has studied the reports submitted with painstaking scrutiny. We are most compassionate and certainly inclined to believe that this claimant is undergoing some pain. However, all pain is not necessarily disabling within the meaning of the Social Security Act. It only reaches disabling proportions when it is of such severity that it precludes a claimant from engaging in any substantial gainful activity. *Timmerman, supra.*

▪ We further realize that the Administrative Law Judge had the opportunity of personally viewing the claimant and her movements and studying the medical reports as we have and we are, therefore, forced to conclude that his determination that claimant's pain was not of sufficient proportion to be disabling, must be upheld. We have no authority to consider this case *de novo,* nor to substitute our judgment for the Secretary, when it is supported by substantial evidence which we find in the record. Therefore, for the reasons outlined, we overrule the plaintiff's motion for summary judgment and grant the defendant's same motion. The Court adopts this memorandum opinion as its finding of fact and conclusion of law and the Clerk will prepare the order in accordance with the Court's finding herein.