549 F.Supp. 616 (1982)
Lenard REEVES, Plaintiff,
v.
Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.
No. 82-396C(B).
United States District Court, E.D. Missouri, E.D.
September 20, 1982.
*617 Brooke Berger, St. Louis, Mo., for plaintiff.
Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, for defendant.

MEMORANDUM
REGAN, District Judge.
This action is before the Court upon the cross-motions of the parties for summary judgment. Plaintiff Lenard Reeves commenced this action for review under 42 U.S.C. § 405(g) of the final decision of the defendant Secretary of Health and Human Services denying him benefits under the Social Security Act.
On March 16, 1981 plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income benefits pursuant to 42 U.S.C. §§ 416(i), 423, and 1381a. He claims disability beginning in July 1980 due to emphysema, nervousness, and a malfunctioning heart. His application was rejected on April 3, 1981. The Social Security Medical Review team found that plaintiff can no longer perform his past work as a material handler, but found his residual functional capacity enabled him to engage in other substantial gainful work activity. The denial was affirmed upon reconsideration. Plaintiff testified and had the assistance of a law clerk at the hearing held on September 3, 1981 in Brentwood, Missouri. On October 28, 1981 the administrative law judge (ALJ) issued an opinion denying any Social Security benefits to plaintiff. The Appeals Council affirmed the ALJ's determination on January 18, 1982. This then became the final decision of the Secretary of Health and Human Services.
Plaintiff was born on October 13, 1931. On his application he claimed to have completed high school. At the hearing, however, he testified he completed only the tenth grade of school. He was a dock worker in the trucking industry from 1953 until April 1980. This work involved walking eight hours per day, standing one hour per day and constant bending and reaching. He lifted objects weighing from 5-100 pounds in loading and unloading trucks. He was exposed to gas, diesel, and chemical fumes. (Tr. 80, 86.)
Plaintiff testified that he was unable to work due to shortness of breath, coughing, and vomiting after walking, lifting objects, or performing strenuous work. (Tr. 27). He stated that his hands shake almost constantly. (Tr. 28.) He has difficulty writing, working with tools, and manipulating small objects. (Tr. 39-40.) He has had problems with his hands since 1951. (Tr. 48.) He claimed to have severe headaches almost constantly. (Tr. 31.) He stated he has blacked out twice. Once he fell off his front porch and the second time he ran into *618 a car. (Tr. 32, 49). He also claimed he had dizzy spells lasting from 10-30 minutes. (Tr. 32.) After exertion, he feels pains in his chest which he described as sharp, fast pains which hurt as much as if someone had stabbed him with a knife. (Tr. 33-34.) He added that the chest pain is not as severe when he sits. (Tr. 34.) He mentioned he had three to four coughing spells per day. (Tr. 35.) He stated his arms, legs, and feet become numb, especially on the right side, and usually at night. (Tr. 35.) His fingers also become numb and cause him pain. (Tr. 36.) His elbows and wrists swell. (Tr. 36, 37.) He has difficulty bending, stooping, and squatting. (Tr. 37.) His knees become numb and cause him pain. (Tr. 37.) He testified he could probably lift about 25 pounds. (Tr. 39.) He can stand only 5-10 minutes and sit only 15-20 minutes at a time without difficulty. (Tr. 40.) He does no housework. (Tr. 44.) He can drive; but, his license was revoked about June 1981 when he blacked out and hit a car.
Medical records submitted by Robert C. Clark, D.O., indicate that plaintiff saw him from March 22, 1976 until July 16, 1980 for fever, cough, and sore throat. A chest x-ray taken July 29, 1976 revealed "some slight accentuation of the hilar densities." (Tr. 94, 95.) There was a possible mild inflammation in the left base. (Tr. 94.) A chest x-ray taken on June 12, 1979 demonstrated that the lungs were "essentially normal," although there was a slight accentuation of the hilar densities." (Tr. 96.) An abdominal radiologic survey showed no active disease or defect.
Plaintiff was admitted to Normandy Osteopathic Hospital on March 9, 1981 through the emergency room for treatment of his chest pain. A pulmonary function test revealed the presence of a "moderate obstructive lung disease." (Tr. 104.) Chest x-rays showed that the interstitial lung markings were accentuated and prominent bilaterally. (Tr. 105.) This report suggested that plaintiff possibly had interstitial fibrosis or chronic bronchitis. An intravenous pyelogram was normal. (Tr. 106.) A barium enema revealed no pathology. (Tr. 107.) A gall bladder and upper GI series showed a mild antral gastritis. (Tr. 120.) An electrocardiogram indicated that plaintiff might have a left posterior hemiblock. (Tr. 110.) A stress test taken on March 12, 1981 revealed dyspnea which was pulmonary in origin, markedly impaired aerobic capacity, hypertension, and no evidence of either ischemia or arrhythmias. (Tr. 111.) The diagnosis was viral pneumonitis anterior chest wall syndrome, chronic obstructive pulmonary disease, and antral gastritis.
Robert P. Poetz, D.O., board-certified general practitioner, from March 16 until April 13, 1981, prescribed Theodore, Tranxene, Drixol, Darvocet, Bactrim, Naprosyn, and Phenaphen for plaintiff's chest pains, blackouts, nerves and labored breathing. (Tr. 114.)
A medical report from David A. Gardner, D.O., board-certified osteopathic internist, indicated that plaintiff had a history of pulmonary emphysema. He noted that plaintiff stated he was treated for emphysema while in the military service. He found that plaintiff exhibited "only a moderate degree of impairment in pulmonary function." (Tr. 123.) He diagnosed plaintiff's impairment as a moderate obstructive lung disease. (Tr. 123.)
A medical report dated June 8, 1981 showed plaintiff saw Ijaz Jatala, M.D., on June 5, 1981. Dr. Jatala found no psychosis, organic brain impairment, or depression. Other than some tremor in both hands, there was no neurological impairment. Dr. Jatala concluded that plaintiff suffered from a chronic obstructive pulmonary disease. (Tr. 130.)
A residual functional capacity report dated June 15, 1981 stated that in an eight-hour workday plaintiff could stand and walk six hours per day, sit eight hours per day, and frequently carry 10-20 pounds. Plaintiff should be able to frequently bend, squat, kneel, crouch, crawl, climb stairs, and reach above shoulder height. No restrictions in the use of plaintiff's upper or lower extremities were noted. Other than a restriction against exposure to dust, fumes, and gases, no other environmental restrictions were indicated. (Tr. 133.)
*619 A letter from Dr. Poetz dated August 31, 1981 stated that Dr. Routsong, a neurosurgeon, examined plaintiff on August 17, 1981. The examination revealed
a mild, low amplitude, rapid, fine tremor in both upper extremities being most pronounced in the right upper extremity when compared to the left upper extremity especially at the distal aspects of the arms.
(Tr. 139, 141.) Dr. Poetz opined that plaintiff cannot perform any strenuous work.
The ALJ found no medical evidence that plaintiff's impairments are of the severity as described in Appendix 1 of 20 CFR Part 404, Subpart P. He found that plaintiff is precluded from performing his past relevant work as a dock worker because it involved very strenuous exertion. The ALJ concluded, however, that plaintiff was not precluded from performing any substantial gainful activity. Lung disease of only mild to moderate severity prohibits only strenuous work. He stated that plaintiff's hand tremors have not disrupted his employment for over thirty years. He found plaintiff could perform light work. The ALJ did not accept plaintiff's explanation for lying about his education and found plaintiff had a high school education. The ALJ stated that even assuming plaintiff had a tenth grade education, the ultimate disability decision would be the same. His work as a dockhand was semi-skilled, but involved no transferrable skills. Plaintiff is a younger individual as defined in 20 CFR §§ 404.1563 and 416.963. Plaintiff's age, education, work experience, and residual functional capacity for light work indicate that plaintiff is not disabled. The ALJ considered plaintiff's subjective complaints of pain, but found them non-credible because most of the complaints had not been brought to the attention of a physician. He concluded that plaintiff's complaints were out of proportion with the results of the objective medical tests. The ALJ noted that only Dr. Poetz indicated plaintiff could not perform strenuous work.
Plaintiff argues that the ALJ should not be permitted to rely on the grid as a substitute for the testimony of a vocational expert. Plaintiff alleges several flaws in the grid system. Plaintiff also argues that the grid should not be applied in his case because he has non-exertional impairments (i.e. restricted from exposure to dust, fumes, and gases; tremors in hands). In the alternative, plaintiff requests a remand for a hearing at which a vocational expert testifies.
Plaintiff alleges disability due to ischemic heart disease, viral pneumonitis, anterior chest wall syndrome, antral gastritis, chronic obstructive pulmonary disease, essential tumor, emphysema, possible intrastitial fibrosis or chronic bronchitis, dyspnea, markedly impaired aerobic capacity, and hypertension.
Plaintiff has the burden of establishing that he is disabled by showing that an impairment prevents him from engaging in any substantial gainful activity for a period of 12 months. Russell v. Secretary of HEW, 402 F.Supp. 613, 618 (E.D.Mo.1975), aff'd, 540 F.2d 353 (8th Cir. 1976). If the plaintiff demonstrates that his impairment is so severe that he cannot perform his former work, then the burden shifts to the Secretary to prove he can perform some other work. Timmerman v. Weinberger, 510 F.2d 439, 443 (8th Cir. 1975). The ALJ concluded that plaintiff cannot perform his former work, but can engage in light work activity.
The Secretary's decision is conclusive if it is supported by substantial evidence (i.e. relevant evidence a reasonable person might accept as adequately supporting a decision). Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). The issue in this case is whether substantial evidence exists on the record to support the Secretary's decision that plaintiff can engage in substantial gainful activity.
Plaintiff's objections to the use of the medical-vocational grid are without merit in light of the Eighth Circuit's recent decision in McCoy v. Schweiker, 683 F.2d 1138, (8th Cir. 1982). In McCoy, the court *620 held that the use of the grid provides substantial evidence with which to indicate that a claimant can perform substantial gainful activity.
Plaintiff also argues that the grid is not controlling because he suffers from non-exertional impairments. McCoy, supra. Residual functional capacity, a factor in the grid regulation determination, is defined in terms of physical ability to perform exertional tasks; therefore, the grid cannot be used to determine disability without considering other evidence of the effect of the non-exertional impairments. Id. The ALJ must consider how much the non-exertional impairments diminish a claimant's residual functional capacity. 20 CFR Part 404, Subpart P, Appendix 2, § 200.00(e)(2).
The ALJ found that plaintiff's non-exertional impairments did not significantly limit his ability to work. The Secretary argues that the ALJ can still use the grid when the non-exertional impairments do not significantly affect work capacity. The Court agrees. As stated in 20 CFR Part 404, Subpart P, Appendix 2, § 200.00(e)(2), the ALJ should apply the grid and then consider
how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.
In light of the objective medical findings, there is no reason, on the record, to not accept the ALJ's finding that the non-exertional impairments did not preclude plaintiff from engaging in substantial gainful activity.
No doctor has referred to plaintiff as totally disabled. Dr. Poetz merely stated that plaintiff cannot perform strenuous work. The ALJ implicitly accepted this opinion and found that plaintiff cannot perform heavy work, and thus cannot perform his former work. Based upon the objective medical tests and the opinions of the physicians, there is no substantial evidence of a disabling impairment. See Timmerman, supra.
Plaintiff alleges disability due to pain and numbness throughout his body. The ALJ assessed plaintiff's subjective complaints of pain and found them not to be credible. Not all pain is disabling. Pain is considered disabling only when it is not remediable and precludes a person from engaging in any substantial gainful activity. Gianella v. Califano, 477 F.Supp. 7 (E.D.Mo.1979). Subjective complaints of pain cannot be disregarded merely because no objective medical evidence substantiates it. Northcutt v. Califano, 581 F.2d 164 (8th Cir. 1978). The ALJ must evaluate subjective symptoms with due consideration for credibility, motivation, and medical evidence of impairment. Timmerman, supra. The Secretary, not the Court, must weigh the evidence and assess the credibility of witnesses. Fitzsimmons v. Mathews, 647 F.2d 862, 864 (8th Cir. 1981). As trier of fact, the ALJ has the best opportunity to receive the evidence and assess demeanor and credibility. His conclusions should be given considerable weight. Easttam v. Secretary of HEW, 364 F.2d 509, 513 (8th Cir. 1966).
Substantial evidence supports the ALJ's finding that plaintiff's complaints of pain were non-credible. There is no indication on the record that plaintiff failed to present all of his complaints to the doctors. When he did complain about shortness of breath and chest pain, the doctors prescribed medication. Plaintiff continues to take the medication. There is no reason on the record to not accept the Secretary's determination that plaintiff's complaints were non-credible.
Although the plaintiff has tremors in his hands, he has worked since 1951 with this impairment. Since he has been able to work in spite of his impairments, he cannot be considered disabled. See Easttam, supra, at 513.
In the opinion of the Court the final decision of the defendant Secretary is supported by substantial evidence and the defendant is entitled to summary judgment. Fed.R.Civ.Pro. 56. An appropriate order will issue. A remand is unwarranted because plaintiff has had a fair hearing and full administrative consideration.