**Hazel A. TIPTON, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of the Department of Health and Human Services, Defendant.**

**No. 87–4217–CV–C–5.**

United States District Court, W.D. Missouri, C.D.

Oct. 27, 1987.

Paul T. Graham, Jefferson City, Mo., for plaintiff.

Robert G. Ulrich, U.S. Atty., Kansas City, Mo., for defendant.

### ORDER

SCOTT O. WRIGHT, Chief Judge.

Plaintiff seeks review of a final decision disallowing her claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* Section 405(g) of the Act provides for judicial review of a "final decision" of the Secretary of Health and Human Services. Pending before the Court are cross-motions for summary judgment. For the following reasons, plaintiff's motion for summary judgment will be denied, and the defendant's motion will be granted.

#### I. Procedural History

Plaintiff Hazel A. Tipton filed her application for disability benefits under Title II of the Social Security Act on August 26, 1985. Her claim was denied initially and upon reconsideration. After a hearing on January 25, 1984, Administrative Law Judge (ALJ) Lawrence A. Erhart denied plaintiff's claim on November 26, 1986. The denial was premised on a finding that plaintiff's complaints of pain were not credible and that she could perform her past relevant work as a bookkeeper. The Appeals Council denied plaintiff's request for review on March 19, 1987. The ALJ's decision, therefore, stands as the final decision of the Secretary for review before the Court.

#### II. Factual Background

A. *Employment History*

At the time of the hearing, plaintiff was a 56–year–old woman with a tenth grade

education. The record reveals that she was last employed as a bookkeeper in 1981. She had worked previously as a waitress and a secretary.

## B. *Medical Evidence*

The plaintiff alleged that she had been disabled since September 5, 1984, because of arthritis, high blood pressure, and dizziness. It should be noted that plaintiff filed a previous application in October, 1981, alleging a 1981 onset of these same conditions. In the ALJ's decision now on review in this Court, the ALJ relied solely on medical evidence from July 22, 1982, until January 25, 1984.

The record indicates that on June 7, 1983, William D. Smittle, D.O., diagnosed the plaintiff as having rheumatoid arthritis, essential hypertension, anxiety depressive reaction, chronic sinusitis and hypothyroidism. He concluded that while plaintiff was not disabled by these impairments, her future activity could be reduced by her limited ability to concentrate.

In a letter written by Dr. Smittle on June 11, 1985, he indicated that he had treated the plaintiff for peripheral vascular insufficiency, anxiety-depressive personality, bursitis and hypothyroidism. Based on this diagnosis, he concluded that plaintiff was disabled from performing her regular occupation. In 1986, Dr. Smittle reiterated that plaintiff was unable to handle a stressful work environment.

Plaintiff was examined by Dr. L. David Linsenbardt on September 25, 1985, for complaints of diffuse joint and neck pain, a constant headache, chest discomfort, breathing difficulty and morning hand stiffness. Dr. Linsenbardt recorded plaintiff's blood pressure as 126/60 in the left arm and 100/60 in the right arm while sitting. While standing, it was 106/50 in the left arm and 90/62 in the right arm. Reflexes, vibratory sense, and gait were normal; the Romberg test was negative. Dr. Linsenbardt's diagnosis was chronic, endogenous depression, diffuse degenerative joint disease, and a history of both hypothyroidism and hypertension.

In a report dated March 6, 1986, Dr. Thomas D. Robbins found plaintiff to be moderately anxious, but in no obvious distress. Dr. Robbins reported that plaintiff was oriented to person, place, time, and date, was cooperative, and answered questions appropriately. He found no evidence of mental impairment and noted that plaintiff's thyroid gland appeared normal with no apparent nodularity.

A musculoskeletal exam revealed moderate tenderness at the base of the cervical spine, with complete lateral rotation, flexion, and extension. The plaintiff moved all extremities without apparent difficulty. Dr. Robbins' diagnosis included chronic anxiety, diffuse degenerative joint disease, especially involving the cervical spine, hypothyroidism by history, and status post total abdominal hysterectomy and hypertension.

On March 25, 1986, H.O. Lauten, D.O., interpreted cervical spine x-rays to show a degree of osteoporosis, some degenerative arthritic spurring, some osteoarthritis of the seventh cervical articular facet, and degenerative arthritic blunting involving the lateral interbody space at the level of C5–6 bilaterally. There was no collapse of the intervertebral bodies and there was normal cervical lordosis.

Dr. J.D. Morris administered a neurological examination on May 28, 1986. At that time, plaintiff complained of a history of weakness in the lower extremities. Dr. Morris noted that plaintiff had a history of hypothyroidism and hypertension, while diagnosing plaintiff as having true myopathy with proximal muscle weakness, worse in the lower than upper extremities, and related to hypothyroidism.

After testing for myesthesia, Dr. Morris reported that the results were inconsistent with a diagnosis of myesthesia. A needle EMG examination was, however, consistent with a diagnosis of myopathy.

On August 6, 1986, Dr. Morris stated that he believed plaintiff had myopathy, hypothyroidism, and a history of depression that made her ability to obtain gainful employment difficult. He concluded that based solely on her myopathy, he could not

say plaintiff was 100 percent disabled. He believed, however, that myopathy would preclude employment in jobs that entailed heavy lifting, going up and down stairs, and getting up and out of chairs frequently.

As a result of a consultative examination, Dr. David Scherr reported on July 24, 1986, that plaintiff suffered from moderately severe osteoporosis without compression fractures and moderately severe narrowing of the lumbosacral disc space, but no other signs of degenerative arthritis. Dr. Scherr concluded that plaintiff had several minor orthopedic impairments, but that due to her emotional problems and her inability to do much standing or lifting, plaintiff was totally disabled.

Derek D. Hughes, M.D., conducted a psychiatric evaluation of the plaintiff on September 19, 1985, and again on August 19, 1986. On both occasions, Dr. Hughes found plaintiff to be depressed, but not to a severe degree. During the 1986 examination, Dr. Hughes felt that the plaintiff was possibly being evasive on the Rorschach testing. On September 6, 1986 Dr. Hughes assessed the claimant's residual functional capacity as fair in her ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, and to maintain attention and concentration. He noted that it might be difficult for her to follow through on tasks, and that she had a poor ability to understand, remember, and carry out complex job instructions, based on plaintiff's complaints.

At the hearing held on August 7, 1986, plaintiff testified that she could not walk up steps without having something to pull herself up with. She complained of pain in her left leg and of constant headaches. Plaintiff believed that these physical symptoms, as well as her adverse reaction to telephone ringing, would preclude further employment.

### III. Standard of Review

The scope of judicial review of the defendant's decision is statutorily defined. 42 U.S.C. § 405(g) provides that the Secre-

tary's decision is conclusive if it is supported by substantial evidence. *Alexander v. Weinberger,* 536 F.2d 779 (8th Cir.1976). This standard of substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *McMillian v. Schweiker,* 697 F.2d 215, 221 (8th Cir.1983). This standard of review, however, is "more than a mere rubberstamp of the Secretary's decision." *Id.* at 220.

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). Further, she must prove that the disability existed prior to the expiration of her insured status. In order to meet the statutory definition, the claimant must show (1) that she has a medically determinable physical or mental impairment that will either last for at least 12 months or result in death; (2) that she is unable to engage in any substantial gainful activity; and (3) that this inability is a result of her impairment. *McMillian,* 697 F.2d at 220.

If the claimant establishes that her impairment is so severe that she cannot return to her former occupation, the burden shifts to the Secretary to prove that the claimant can perform some other kind of substantial gainful activity. *O'Leary v. Schweiker,* 710 F.2d 1334, 1337 (8th Cir. 1983); *McDonald v. Schweiker,* 698 F.2d 361, 364 (8th Cir.1983). To meet this burden, the Secretary need not find a specific job opening for the claimant, but must prove that substantial gainful activity is realistically within the mental and physical capabilities of the claimant. *McMillian,* 697 F.2d at 221.

### IV. Analysis

Plaintiff challenges the Secretary's decision that she did not carry her burden of proving that she could not perform her past relevant work as a bookkeeper. After carefully considering the record, the parties' arguments, and the applicable law, the Court finds that the Secretary's decision is

supported by substantial evidence and, therefore, must stand.

In his findings, the ALJ took note of medical evidence which established that plaintiff had degenerative joint disease and chronic anxiety. These impairments, however, do not equal one listed in Appendix 1, Subpart P, Regulations No. 4. Therefore, it was incumbent upon the ALJ to determine whether the plaintiff could return to her prior work as a bookkeeper. In considering this issue, the ALJ found that the plaintiff's complaints of leg weakness, pain, swelling, headaches, anxiety, and impaired memory were not supported by medical and other evidence. He found these allegations to be not credible to the extent that they would preclude plaintiff from performing her past relevant work as a bookkeeper.

The decision of the ALJ was in line with the Eighth Circuit standard for considering subjective pain set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir.1984). In *Polaski*, the Eighth Circuit stated that: "The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians ..." *Id.* at 948. While the adjudicator may accept or reject the claimant's subjective complaints, he may not do so solely based on personal observation. *Id.*

The record indicates that the ALJ considered all of the medical evidence, including Dr. Smittle's opinion that the plaintiff was disabled. All of the doctors' concerns for the patient's health seemed to be based on her anxiety and depression. These mental impairments were not identified as part of the plaintiff's disability in her application for benefits. The ALJ noted that the plaintiff attempted to shift her basis of disability at the hearing; and while there existed some basis for this shifting, he concluded that even her mental ability was not impaired to a degree that would preclude employment.

The ALJ found that plaintiff's residual functional capacity to perform work-related activities included work which did not involve lifting more than twenty pounds. 20 C.F.R. 404.1545. The plaintiff's past relevant work as a bookkeeper did not require the performance of work-related activities precluded by the twenty-pound lifting limitation. 20 C.F.R. 404.1565. Therefore, the ALJ concluded that plaintiff's impairments did not prevent her from performing her past relevant work.

■ The burden of proof fell on the plaintiff to prove that she could not perform her prior work. *Martonik v. Heckler*, 773 F.2d 236, 239 (8th Cir.1985). The ALJ found that the plaintiff failed to meet this burden. In a recent decision by the Eighth Circuit, it is clearly stated that the District Court is not a fact-finder in Social Security cases. The District Court may analyze (1) whether the Secretary considered all of the evidence relevant to claimant's complaints of pain; and (2) whether the evidence contradicted the claimant so that the ALJ could discount the testimony for lack of credibility. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987).

In this case, the ALJ properly considered the evidence and found that the plaintiff's testimony could be discounted for lack of credibility. These findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). It is, therefore, not the role of the District Court to set aside the ALJ's findings.

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment is granted.