**Marvin E. SCHRODER, Plaintiff,**

**v.**

**Louis W. SULLIVAN, M.D., Secretary of Health & Human Services, Defendant.**

**No. 91–0224–CV–W–3.**

United States District Court, W.D. Missouri, W.D.

April 10, 1992.

Susan J. Fershee, Law Office of Dennis W. Jennings, Kansas City, Mo., for plaintiff.

Gay L. Tedder, U.S. Attys. Office, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

Before this Court are Plaintiff's and Defendant's Motions for Summary Judgment. This is an action for judicial review of a final decision of the Secretary of Health and Human Services denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act. This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff's applications were denied initially and upon reconsideration. On February 27, 1989, following a hearing, an Administrative Law Judge ("ALJ") rendered a decision against Plaintiff. On November 30, 1989, the Appeals Council of the Social Security Administration remanded the case to the ALJ for further proceedings. On April 17, 1990, the ALJ issued a decision finding that Plaintiff was not under any "disability." On January 14, 1991, the Ap-

peals Council issued a decision that Plaintiff was not entitled to benefits.

## I. STATEMENT OF FACTS

### I.A. SCHRODER'S TESTIMONY

Marvin Schroder testified that he was born November 28, 1934; has a tenth grade education; can read and write; cannot drive, inasmuch as he lost his license due to a conviction for driving while intoxicated; and is not married, but living with a woman with whom he has no romantic involvement and her 22 year old son. At the time of the hearing, he was taking Cardizem, an aspirin each day, and three to six nitroglycerin tablets per day. He testified that minimal exertion causes his chest to hurt and his heart to flip flop. He was last employed as a rumble barrel operator, and he lost his job because he was sick. He has also worked as a bullet inspector, where no lifting or standing was required. He has not applied for work since his heart attack in November of 1987. He testified that his daily activities are limited to reading, watching television, and listening to the radio and that he sleeps no more than three to three and a half hours a night and frequently takes naps during the day time.

Schroder testified that his disability arises out of a heart attack, after which he underwent a heart catheterization procedure. He testified that climbing six steps causes his chest to hurt. He testified that he must take a nitroglycerin tablet before climbing stairs into his apartment and walking home from the QuikTrip in his neighborhood. He also complained of high blood pressure and ulcers and stated that varicose veins in his right leg cause him constant pain. Twenty-five years before the hearing, a doctor recommended a "stripping procedure," for his varicose veins, but he did not have the surgery because of his fear of the operation. He has worn support hose all of his life and not pursued formal medical treatment. He stated that he cannot sit for long periods of time due to his leg pain. He elevates his legs when he has leg pain, and is unable to sit for more than thirty minutes at a time nor can he stand for more than 15–20 minutes at a time.

Schroder also asserts he has had back problems since 1952,[1] but has not sought treatment for it; suffers from fatigue; suffers from problems with his lungs and experiences shortness of breath at times because his lungs have collapsed three times; is a very nervous person and becomes upset easily, but has never seen a psychiatrist; and has not seen a doctor in over a year, because he has no transportation.

## TESTIMONY OF VOCATIONAL EXPERT

The Vocational Expert testified at the first hearing that Schroder's past relevant work as an inspector at an ammunition plant was sedentary and unskilled, and rated 4 to 5 on a scale of 1 to 10, for stress, which is low to medium stress. The Vocational Expert testified that Schroder could perform his prior work as a bullet inspector if he could sit for 2 hours. The Vocational Expert testified that Plaintiff would be unable to perform his prior work or any other work in the national economy if he becomes easily fatigued and has to lie down from 30 to 90 minutes twice a day.

The same Vocational Expert appeared and testified at the March 6, 1990, hearing and testified that Schroder's work as a bullet inspector was "low stress" and his prior opinion that Plaintiff could perform his work as a bullet inspector had not changed. The Vocational Expert testified at the first hearing that a person, who was subject to frequent or constant fatigue, requiring a nap two to three times during ordinary working business hours, would be unable to perform his past relevant work or to perform any positions in the United States.

### I.B. TESTIMONY OF MEDICAL EXPERTS

Dr. Olmo, a psychiatrist, testified that Schroder suffered from an anxiety-related

---

1. *See supra* for Dr. Gregory Hartman's testimony that Schroder suffered a lumbar compression fracture in November 1957. To the extent there is an inconsistency in the testimonies, they are insignificant for the purposes of this opinion.

disorder following the onset of his disability on or about November 25, 1987, and that prior to November of 1987, he suffered from a substance addiction disorder. Specifically, Schroder was afraid of having a heart attack, and, therefore, abstained from sex and other activities. Dr. Olmo concluded that Schroder's anxiety aggravated his angina, that he experienced moderate difficulty in maintaining social functioning, and that he seldom experienced deficiency of "concentration, persistence and pace." Further, there was insufficient evidence to judge frequency of episodes of deterioration. Dr. Olmo concluded that Plaintiff's anxiety disorder did not meet or equal § 12.06 of the Listing Impairments in 20 C.F.R. Part 404, Subpart P, App. 1.

Gregory Hartman, M.D., testified that Schroder had a myocardial infarction in November of 1987 and suffered lumbar compression fractures in 1957, which would support the presence of lower back problems, including arthritis. Schroder suffered from chronic obstructive pulmonary disease, which manifested itself in the form of a cough and shortness of breath. Dr. Hartman did not find evidence in the medical records to support Schroder's complaints that he could stand for only 15–20 minutes before developing fatigue or having shortness of breath with related chest pain; that he could not lift more than 2 to 5 pounds nor walk more than 2 to 3 blocks without experiencing chest pain or shortness of breath; that he could not sit longer than 30 minutes without experiencing leg pain; that emotional stress caused him to experience a severe anginal episode; and that he must take several naps a day. Schroder cites Dr. Hartman's testimony for the proposition that the existence of the subjective complaints indicated a need for further research.

## I.C. MEDICAL EVIDENCE

Schroder's medical records began in July of 1981 when he was admitted to the Medical Center of Independence with his third spontaneous pneumothorax on his right side. He went to the emergency room complaining of chest pain on his right side. A chest x-ray showed a complete collapse of his right lung, and a chest tube was inserted allowing his lung to expand. His diagnosis included spontaneous pneumothorax, right side and hypertension.

On November 21, 1987, Schroder went to the Medical Center of Independence suffering a heart attack. He was then transported to Menorah Hospital, where he was an inpatient from November 25, through December 2, 1987. Steven M. Bloom, M.D., noted that Schroder had a history of alcoholism and of smoking three packs of cigarettes a day, as well as a history of hypertension. On the morning of his admission, he awoke with chest heaviness, shortness of breath, diaphoresis radiation down his left arm, as well as nausea and vomiting. His diagnosis included acute myocardial infarction, coronary artery disease, ventricular fibrillation and hypertension. He underwent right and left heart catheterization and an angiogram. The results of the cardiac catheterization revealed that his right coronary artery showed a thirty percent stenosis in the mid region. His left anterior descending showed two lesions proximally. The first legion was in the first diagonal vessel and was described as a thirty to forty percent lesion. Proximal to the second diagonal vessel was a sixty to seventy percent ring-like lesion, which was smooth and showed no evidence of jaundice. Dr. Bloom's impressions included moderate disease of left interior descending artery with a sixty to seventy percent lesion as well as known destructive disease of the right coronary artery. The electrocardiogram revealed an inappropriate thickening in the apical region, which was possibly consistent with layered thrombus.

On December 18, 1987, Schroder underwent testing at the Veterans Administration Medical Center. An EKG was performed which was abnormal, showing sinus bradycardia, anterolateral ischemia, which was possibly acute. Subendocardial injury was to be considered and a follow-up EKG was recommended.

Schroder was evaluated by Dr. Shalet on March 8, 1988, at the request of the Secretary. Dr. Shalet noted Plaintiff's medical

history, including suffering a cardiac arrest in the ventricular tachycardia and ventricular fibrillation requiring cardioversion. Medication was prescribed to him before being discharged from the hospital. Dr. Shalet's impression included arteriosclerotic heart disease with a history of severe myocardial infarction and persistent post infarction angina; varicose veins, right leg; history of hypertension; history of alcoholism; history of fractured vertebrae.

An EKG was performed on April 22, 1988, which showed sinus arrhythmia and was described as an atypical EKG. On December 30, 1988, Schroder was examined by J. Scott Morrison, M.D., a psychiatrist, at the request of the Secretary. Schroder had ceased drinking and smoking and was attempting to stay calm. He further stated that he no longer watched sporting events on T.V. nor argued, and gave up sex and driving for fear of having a heart attack. Dr. Morrison stated that the breathing pattern could be due to anxiety. The doctor's diagnosis included adjustment disorder with anxious mood and mild alcohol abuse history in remission. The doctor further stated that from the psychiatric view, Schroder would be able to handle fairly low stress employment.

## ANALYSIS

■ The Secretary found that Plaintiff's impairments would not preclude him from performing his former unskilled sedentary work as a bullet inspector. If an individual is capable of performing work he has done in the past, a finding of "not disabled" must be made. *Wingert v. Bowen*, 894 F.2d 296, 298 (8th Cir.1990) and *Warford v. Bowen*, 875 F.2d 671, 674 (8th Cir.1989). Questions of fact, including the credibility of a claimant's subjective testimony, are primarily for the Secretary to decide, not the courts. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987). The standard of review is whether the decision of the Secretary is based upon substantial evidence. *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir.1988).

The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

*Id.* and *Steele v. Sullivan*, 911 F.2d 115, 116 (8th Cir.1990). "If there is inconsistency in the record as a whole, the ALJ may disbelieve subjective complaints. *Polaski [v. Heckler] supra*, 739 F.2d [1320] at 1322 [ (8th Cir.1984) ]. As long as an explicit credibility finding is made, it is within the province of the ALJ to decide whether to believe the subjective complaints." *Ruhl v. Bowen*, 710 F.Supp. 255, 258 (W.D.Mo. 1989).

■ Plaintiff asserts that the Secretary failed to consider his testimony that he must nap during the day, cannot lift more than two to five pounds, and suffers from anxiety. The ALJ considered his testimony and found it not credible. Even if Schroder could lift no more than five pounds and suffers from anxiety, he could perform his past work as a bullet inspector. This Court does not doubt that Plaintiff is anxious nor that he may experience pain at times. "As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." *See Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir.1987). When evaluating the Plaintiff's subjective complaints of pain, the ALJ may consider the following factors to determine the sincerity of the claimant's allegations of pain:

(1) claimant's willingness to submit to treatment, *Benskin*, 830 F.2d at 884;

(2) the type of medication prescribed, *Nunn v. Heckler*, 732 F.2d 645, 648 (8th Cir.1984); and

(3) the frequency and type of treatment and medication, *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir.1989).

While lack of medical evidence to support the degree of the alleged pain cannot be the sole determining factor, claimant's believability, is a factor that may be considered. *Cruse*, 867 F.2d at 1186.

■ Plaintiff testified that he was unable to sit due to leg pain caused by vari-

cose veins. Plaintiff's alleged inability to sit is inconsistent to statements made to Dr. Shalet in March of 1988 where Plaintiff stated that he has had varicose veins in his right leg for at least twenty years and that they cause only "occasional mild discomfort". The record, as a whole, does not support Plaintiff's allegation that he cannot sit more than thirty minutes at a time.

■ Schroder also stated that he experiences an "occasional backache," however, there is no medical evidence to support the conclusion that Schroder is disabled because of backaches or because of a combination of impairments, including the backache. Further, a 1987 exercise test showed good exercise tolerance. Plaintiff asserts that he has experienced back pain since an injury in 1952, but receives no treatment for this condition.[2]

■ Further, Plaintiff takes no medication for back pain or leg pain. The ALJ properly considered Plaintiff's lack of treatment in finding Schroder's allegation of an inability to sit more than thirty minutes due to leg and back pain not credible. *Sobania v. Secretary of Health and Human Services*, 879 F.2d 441, 445 (8th Cir. 1989).

Plaintiff asserts that he cannot perform his former work because it requires "medium stress" and because he is only able to sit for thirty minutes at a time. The Vocational Expert testified at the second hearing that Plaintiff's prior position was one of low stress. Plaintiff also asserts that he is unable to perform his former work as a bullet inspector because he can only lift from two to five pounds. Plaintiff's alleged lifting limitation is irrelevant to his ability to perform his former work. Plaintiff testified that he was not required to either lift or stand as a bullet inspector.

■ Plaintiff also complained of chest pain with exertion and certain emotional stress. Because Plaintiff's work as a bul-

let inspector required no lifting or standing and did not entail a great deal of exertion, this assertion is without merit. Furthermore, the record establishes that Plaintiff's chest pain is relieved promptly with nitroglycerin. A medical condition that can be controlled by medication cannot be considered disabling. *Warford v. Bowen*, 875 F.2d 671, 673 (8th Cir.1989).[3]

Plaintiff's alleged fatigue and need to take naps is also not documented in the record. Plaintiff's failure to complain contemporaneously to his physician about drowsiness contradicts his assertion that he must nap during the day. *Ruhl*, 710 F.Supp. at 258–59. It is as likely that Plaintiff chooses to nap at times he might otherwise choose to remain awake. *Id.* at 259.

■ Plaintiff asserts that he is anxious. The mere presence of a mental disturbance is not disabling per se, absent a showing of severe functional loss establishing an inability to engage in substantial gainful activity. *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir.1990). Plaintiff did not list a mental impairment on his application for benefits and has never received any treatment or medication for this impairment. *See Tipton v. Bowen*, 673 F.Supp. 361, 365 (W.D.Mo.1987). Dr. Morrison diagnosed a "mild" adjustment disorder with anxious mood. Dr. Olmo testified that Plaintiff's anxiety disorder did not meet or equal § 12.06 of the Listing Impairments in 20 C.F.R. Part 404, Subpart P, App. 1. Plaintiff testified that his anxiety or nervousness would not preclude him from working. The hypothetical relied on by the ALJ essentially included this assertion, in that it was based upon an assumption that Plaintiff experiences chest pain with exertion or with emotional stress. The ALJ correctly found that Plaintiff's mild adjustment disorder would not pre-

---

**2.** When an individual had worked with an impairment, absent any significant deterioration, he cannot claim it as disabling at present. *Reeves v. Schweiker*, 549 F.Supp. 616 (E.D.Mo. 1982).

**3.** In response to questioning about lack of treatment for chest pain, plaintiff has testified that he is seen at the VA "whenever they want [him] to come down." Plaintiff was last seen at the Veterans Administration Medical Center in December of 1987 and March of 1988.

clude him from performing substantial gainful activity.

 The ALJ's credibility finding must be affirmed and supported by substantial evidence on the record as a whole and this Court cannot substitute its judgment for that of the Secretary. *Hutsell v. Sullivan*, 892 F.2d 747, 750 (8th Cir.1989). Here, sufficient basis exists to discount Plaintiff's subjective complaints of pain where the complaints are inconsistent with the record as a whole. *See Id.; Benskin*, 830 F.2d at 885; and *Underwood v. Bowen*, 807 F.2d 141, 143 (8th Cir.1986). Because the Secretary articulated the inconsistencies upon which he relied in discrediting Plaintiff's subjective complaints and because those inconsistencies are supported by the record as a whole, his credibility finding must be affirmed. *Hutsell*, 892 F.2d at 750.

Plaintiff asserts that the ALJ failed to evaluate his impairments in combination. The Vocational Expert's testimony was based upon a consideration of Plaintiff's impairments in combination. *See Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990). The hypothetical relied on by the ALJ included those impairments which the Secretary found credible, and excluded only those impairments which were discredited for legally sufficient reason. *Andres v. Bowen*, 870 F.2d 453, 455–56 (8th Cir.1989) and *Ruhl*, 710 F.Supp. at 259.

Plaintiff complains that the ALJ improperly relied on the testimony of Dr. Olmo and Dr. Hartman, who were medical advisors to the ALJ. In this case, there was no evidence from a treating physician. The majority of the evidence was developed by the Social Security Administration and it is significant that no doctor of record opined that Plaintiff is disabled.

 Plaintiff asserts that the ALJ improperly failed to consider the hiring practices of employers. The issue of hireability is not to be considered in disability hearings. *See* 42 U.S.C. § 423(d)(2)(A) and *Thomas v. Sullivan*, 928 F.2d 255, 261 (8th Cir.1991).

**CONCLUSION**

The ALJ properly found that the testimony and medical evidence contradicted Plaintiff's claims and that Plaintiff's testimony was not credible. Substantial evidence on the record as a whole supports the Secretary's decision that Plaintiff is not disabled. This Court does not doubt that Plaintiff believes he is under a disability, however, the medical evidence simply does not support the conclusion that he is disabled.

Accordingly, the ALJ's decision must be affirmed, even if there is evidence on the other side. *Consolo v. Federal Maritime Com.*, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). It is hereby

ORDERED that Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.