**Adrianne M. FORSON, Plaintiff,**

v.

**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, Defendant.**

**No. CIV.A. 02–2021–DJW.**

United States District Court, D. Kansas.

April 15, 2003.

Christopher Allman, Christina L. Medeiros, David D Zimmerman, Office of United States Attorney, Kansas City, KS, for Defendant.Ross E. Stubblefield, Blue Springs, MO, for Plaintiff.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Plaintiff seeks judicial review (doc. 11), pursuant to 42 U.S.C. § 405(g), of the final decision of Defendant Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance under Title II of the Social Security Act, as amended. For the reasons set forth below, the decision of the Commissioner denying Plaintiff benefits is affirmed.

### I. Standard of Review

■■■ Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), a court may render "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.[1] The Supreme Court has held that "substantial evidence" is "more than a mere scintilla" and is "such relevant evidence as a reason-able mind might accept as adequate to support a conclusion."[2] In reviewing the record to determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner.[3] Evidence is not considered substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion."[4]

■■■ The court also reviews the decision of the Commissioner to determine whether the Commissioner applied the correct legal standards.[5] The Commissioner's failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis.[6] Accordingly, the court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and to determine whether the correct legal standards were applied.[7]

### II. Procedural History

Plaintiff filed her application for disability insurance benefits on July 17, 1998. (See Certified Transcript of the Record ("Tr.") at 14, 103). The Commissioner denied the claims initially and upon reconsideration. (Tr. 72–75, 78–79, 80–83). On

1. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994).

2. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

3. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir.2000) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

4. *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.1985) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)).

5. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994).

6. *Glass*, 43 F.3d at 1395 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993)).

7. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir.1992).

November 18, 1999, the Administrative Law Judge ("ALJ") conducted a hearing on Plaintiff's claim. (Tr. 14).

On February 18, 2000, the ALJ issued his decision, in which he concluded Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to receive disability insurance benefits. (Tr. 11–29). In reaching this conclusion, the ALJ determined Plaintiff's impairments did not prevent her from performing her past relevant work as a general office clerk, both as generally performed in the national economy and as she actually performed it. (Tr. 29).

On March 2, 2000, Plaintiff requested a review of the hearing decision, which was denied by the Appeals Council on December 4, 2001. (Tr. 6–8, 10). The findings of the ALJ therefore stand as the final decision of the Commissioner in this case.

## III. General Background

Plaintiff alleges she became disabled, unable to work, and eligible to receive disability insurance benefits on September 23, 1993, due to degenerative disc (low back) disease, chronic obstructive pulmonary disease ("COPD") with bronchitis, and hypertension.[8] At the time of the hearing before the ALJ, Plaintiff was 55 years of age. (Tr. 15, 103). Plaintiff has a high school education and her past relevant work consists of working as a payroll clerk and a general office clerk. (Tr. 22, 27, 145–50).

## IV. The ALJ's Findings

In his decision of February 18, 2000, the ALJ made the following findings:

1. Claimant met the earnings requirements of the Act on September 23, 1993, the date she stated she became unable to work, and she continues to meet them through March 31, 2000.

2. Claimant has not engaged in substantial gainful activity since September 23, 1993.

3. Claimant has a combination of medically determinable impairments that are "severe," summarized as: degenerative disc disease (L4–5 and L5–S1); COPD with bronchitis; and hypertension.

4. Claimant does not have an impairment or combination of impairments listed in, or medically equal to any impairment listed in, 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Claimant's testimony and statements, and the third party statement of her son, Dale Shirley, are not fully credible as to the extent of her subjective symptomatology and resultant functional limitations, for the reasons stated in the body of this decision.

6. Claimant's residual functional capacity (RFC) is consistent with an ability to perform work involving lifting no more than 10 pounds frequently or more than 20 pounds occasionally, subject additionally to: a restriction against prolonged walking, but permitting walking around a room or between rooms; an option to alternate between sitting and standing at least at 30 minute intervals; a restriction against frequent climbing, bending, stooping, squatting, crouching, crawling, or kneeling, but permitting such postural activities occasionally during a work day; and a restriction against more than moderate exposure to dust, fumes, odors, smoke, gases and extremes of temperature and humidity.

7. Based on the above-stated RFC, claimant's description of her past

---

8. Brief of Plaintiff at p. 1 (doc. 11).

relevant work, and the vocational expert's testimony, claimant is able to perform her past relevant work as a general office clerk, both as generally performed in the national economy and as she actually performed it.

8. Claimant has not been under a disability from September 23, 1993, through the date of this decision.

(Tr. 28–29).

## V. Analysis and Discussion

The Social Security Administration defines "disability" as the inability to engage in substantial gainful activity for at least twelve months due to a medically determinable impairment.[9] A five-step sequential process is used in evaluating a claim of disability:[10]

Step one is whether the claimant is currently engaged in substantial gainful activity. If claimant is not, the fact finder in step two decides whether the claimant has a medically severe impairment or combination of impairments. Step three entails looking at whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. If no equivalency, step four requires the claimant to show that because of the impairment he is unable to perform his past work. The final step is to determine whether the claimant has the residual functional capacity ("RFC") to perform other work available in the national economy, considering such additional factors as age, education, and past work experience.[11]

If the claimant fails at any of the steps in which she bears the burden of proof, consideration of any subsequent steps is rendered unnecessary.[12] The claimant bears the burden of proof at steps one through four, while the Commissioner bears the burden at step five.[13] If a claimant satisfies steps one, two and three, she is disabled; if a claimant satisfies steps one and two, but not three, then she must satisfy step four. If she satisfies step four, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy.[14]

In this case, the ALJ denied benefits at step four, finding Plaintiff has the residual functional capacity to perform her past relevant work as a general office clerk, both as generally performed in the national economy and as she actually performed it. (Tr. 29). In making this determination, the ALJ discounted Plaintiff's credibility with regard to her subjective complaints of disabling conditions.

Plaintiff challenges the ALJ's determination on the following grounds: (1) the ALJ's decision is not supported by substantial evidence of record; (2) the ALJ erred in determining the weight to be given Plaintiff's testimony; (3) the ALJ did not properly follow step three of the sequential evaluation process; and (4) the ALJ failed to include a narrative discussion of how the medical evidence and other evidence of record supports each conclu-

9. 42 U.S.C.A. § 423(d)(1)(A).

10. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

11. *Anderson v. Apfel,* 100 F.Supp.2d 1278, 1281 (D.Kan.2000) (quotations and citations omitted); *see also,* 20 C.F.R. § 404.1520 (1996).

12. *Burnett v. Shalala,* 883 F.Supp. 565, 567 (D.Kan.1995).

13. *Id.*

14. *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988).

sion in the assessment of her RFC, as required by 20 C.F.R. § 404.1545 and Social Security Ruling 96–8p. The Court will address each of Plaintiff's allegations of error in turn.

## A. Substantial Evidence

■ As her first point, Plaintiff argues the ALJ did not base his decision on substantial evidence of record. More specifically, Plaintiff asserts "no citation to the medical evidence of record, the record as a whole, or any medical treaty [sic] is provided by the Administrative Law Judge to substantiate the allegation that the medication usage is inconsistent with the pain [Plaintiff] alleged. Thus, it is unfounded and not based on the record." [15] The Court disagrees with Plaintiff's assertion.

On page eleven of his decision [16], the ALJ specifically refers to the following testimony from Plaintiff regarding her pain:

● It is primarily back pain that keeps Plaintiff from working. (Tr. 42–43).

● On a scale of one to ten—with a level of ten being the most excruciating pain ever experienced and a level of one being pain associated with a paper cut— Plaintiff's average pain is at a level of seven, but sometimes higher. (Tr. 43–45).

● On an average day, Plaintiff lies down every afternoon for one to three or fours hours because of her pain. (Tr. 50).

On page twelve of his decision [17], the ALJ specifically refers to the following evidence from Plaintiff regarding her medications:

● During the day, Plaintiff takes Ibuprofen for pain. (Tr. 48).

● Approximately three times a week, Ibuprofen does not relieve pain experienced by Plaintiff during the day and she will take Darvocet and lie down. (Tr. 48).

● At night, Plaintiff regularly takes Amitriptyline for leg cramps and, when she has to, Darvocet, for pain. (Tr. 48).

In comparing the above-referenced evidence of Plaintiff's pain to Plaintiff's use of pain medication, the ALJ concluded that "claimant's usage of her pain medications, which appear to be effective, [are] inconsistent with the frequency and degree of pain she allege[s]." (Tr. 25). The Court finds the ALJ properly substantiated his decision with evidence of record and further finds the record substantially supports the ALJ's conclusion. The fact that the ALJ noted in his decision that "no pharmacy records have been submitted to verify purchases of medications corresponding to the stated usage rates" is immaterial, given the ALJ deferred to the medication usage rates alleged by Plaintiff in her testimony to reach his conclusion.

■ Plaintiff next asserts the ALJ improperly drew a negative inference from the fact that, if Plaintiff takes Darvocet during the day, she lies down afterward. Although Plaintiff argues the ALJ used this negative inference to deny her claim, she fails to identify the inference she believes the ALJ made and how such an inference may be construed as negative. The Court is not persuaded by Plaintiff's argument and finds nothing in the ALJ's decision to support Plaintiff's unfounded belief that the ALJ denied her claim for disability benefits—in whole or part— based on the fact that she lies down during the day if she takes Darvocet.

■ In further support of her argument that the ALJ did not base his decision on

15. Brief of Plaintiff at p. 11 (doc. 11).

16. (Tr. 24).

17. (Tr. 25).

substantial evidence of record, Plaintiff argues the ALJ based his decision to deny benefits on a medical inference that weight loss could reduce aggravation of Plaintiff's back pain. Plaintiff argues there is "absolutely" no evidence to support the ALJ's statement that weight loss could reduce aggravation of Plaintiff's back pain. The Court disagrees. On September 12, 1998, was consultatively evaluated for disability by Dr. James G. Henderson, on referral by the Kansas Disability Determination Services Agency in Topeka, Kansas. (Tr. 244). In discussing Plaintiff's back pain, Dr. Henderson noted that "weight loss may be helpful." (Tr. 247). Regardless of this fact, the Court finds nothing in the ALJ's decision to support Plaintiff's belief that the ALJ denied her claim for disability benefits—in whole or part—based on the ALJ's remark that weight loss could reduce aggravation of back pain.

■ Next, Plaintiff argues that the ALJ failed to offer medical evidence to refute her testimony that Plaintiff needs to lie down every afternoon for one to three or fours hours because of her pain—regardless of whether she takes a Darvocet. (Tr. 50). Again, the Court disagrees. The ALJ specifically found that Plaintiff's alleged need to lie down was "medically unsupported, either by a direct statement or by reasonable inference from [Plaintiff's] complaints in treatment." (Tr. 26). Plaintiff does not allege, and the medical records do not reflect, that Plaintiff complained, advised or otherwise communicated to any treating or examining physician that she had a need to lie down during the day—whether due to pain or to fatigue. Additionally, in a July 1998 fatigue questionnaire, Plaintiff specifically indicated that she *did not* require rest during the

day. (Tr. 188). The purported need to lie down during the day must be included in an ALJ's residual functional capacity finding only where "borne out by evidentiary record." [18] Thus, the Court finds no error in the ALJ's decision to discredit Plaintiff's alleged need to lie down every afternoon for one to three or four hours.

Based on this discussion, the Court finds the ALJ supported with substantial evidence in the record those findings of the ALJ challenged by Plaintiff here.

## B. The ALJ's Credibility Determination

As a preliminary matter, Plaintiff argues the ALJ never makes a final credibility determination as required, but instead improperly makes only the following generic statement regarding Plaintiff's credibility:

> A specific credibility finding is required. The Administrative Law Judge finds claimant's testimony to be not credible as to the extent of her functional limitations and subjective pain symptomatology. The undersigned specifically finds no credible work-preclusive "need to lie down." [19]

The Court is not persuaded by Plaintiff's argument. True, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" [20] Instead, the determination or decision must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. [21]

---

18. *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir.1996).

19. (Tr. 26).

20. SSR 96–7p, 1996 WL 374186 (July 2, 1996).

21. *Id.* (citations omitted).

■ Here, the ALJ explicitly found Plaintiff's testimony regarding her functional limitations and her subjective pain symptoms were not credible. More specifically, the ALJ found Plaintiff's testimony regarding her inability to work due to the "need to lie down" daily was not credible. The Court finds the ALJ's credibility determination sufficiently satisfies the specificity requirement set forth in the social security rulings.

Plaintiff also asserts the ALJ did not properly evaluate the credibility of Plaintiff's subjective complaints. The Tenth Circuit has set forth the following factors for analyzing subjective complaints of disabling conditions: (1) whether claimant proves with objective medical evidence an impairment that causes the subjective condition; (2) whether a loose nexus exists between the impairment and the subjective condition; and (3) whether the subjective condition is disabling based on all objective and subjective evidence.[22] If Plaintiff satisfies the first two factors, the ALJ must consider Plaintiff's assertions regarding subjective conditions and decide whether he believes them.[23]

■ In determining the credibility of Plaintiff's testimony, the ALJ should consider such factors as the levels of medication and their effectiveness, the extent to which Plaintiff attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.[24]

■ In reviewing a credibility determination, the court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."[25] Credibility is the province of the ALJ.[26] At the same time, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective complaints are not credible.[27] Credibility findings should be closely linked to substantial evidence and not just a conclusion in the guise of findings.[28]

■ The Court finds the ALJ properly articulated the inconsistencies that led him to find Plaintiff's testimony less than credible. (Tr. 23–26). For example, the ALJ noted that no physician had expressed an opinion that Plaintiff was disabled. (Tr. 25). The Tenth Circuit has held that the fact that "no physician has opined that [a claimant] is disabled" is one factor to be considered in the ALJ's credibility analysis.[29]

Moreover, no doctor ever restricted Plaintiff from all work. The ALJ notes Dr. Brent Koprivica—after an independent medical examination—stated his opinion

**22.** *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994); *Luna v. Bowen,* 834 F.2d 161, 163–64 (10th Cir.1987).

**23.** *Luna,* 834 F.2d at 163.

**24.** *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988).

**25.** *Casias v. Sec'y of HHS,* 933 F.2d 799, 801 (10th Cir.1991).

**26.** *Hamilton v. Sec'y of HHS,* 961 F.2d 1495, 1499 (10th Cir.1992).

**27.** *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995); *but see, Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir.2000) (*Kepler* does not require formalistic factor-by-factor recitation).

**28.** *Kepler,* 68 F.3d at 391 (quoting *Huston,* 838 F.2d at 1133) (footnote omitted).

**29.** *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir.1995).

that Plaintiff had not lost the ability to perform substantial gainful activity and that she could perform "light work" as defined in the *Dictionary of Occupational Titles (DOT)*. (Tr. 25, 237). The ALJ took further note that Dr. Ernest H. Neighbor's worker's compensation evaluation of Plaintiff assessed only a fifteen percent permanent partial impairment to the body as a whole, a rating inconsistent with total disability. (Tr. 25, 228). The lack of significant restrictions imposed by a treating physician supports the ALJ's finding of no disability.[30]

The ALJ also considered Plaintiff's daily activities in his credibility assessment. The ALJ noted Plaintiff's daily activities included watching television, reading, doing housework, doing ten loads of laundry each week and grocery shopping every week for approximately two hours. (Tr. 51–57, 135, 152). Plaintiff states she bathes, washes her hair and changes her clothing daily. (Tr. 152). Plaintiff further states she prepares full meals for herself and her husband and son three to four times per week. (Tr. 152). Plaintiff attends church every Sunday, is on a church committee and regularly plays bunko with friends. (Tr. 24, 54–56).

The Court agrees with the ALJ's conclusion that Plaintiff's activities of daily living undermine her claim of disability. Plaintiff's lifestyle, although restricted, is not consistent with total disability.[31] Moreover, although Plaintiff claims the need to lie down daily, she never has informed her physicians of this fact. Failing to tell her treating or examining physicians about her need to lie down daily supports the ALJ's finding that her complaints were not credible.[32]

With regard to work history, the ALJ notes Plaintiff provided child care for two children in her home after her alleged onset of disability. (Tr. 23, 37, 42). Evidence of employment during a period of alleged disability is highly probative of a claimant's ability to work.[33]

With regard to history of treatment, the ALJ notes Plaintiff did not seek treatment for her back and leg pain during the entire 1998 calendar year. (Tr. 20, 25). The Tenth Circuit has held that frequency of medical contacts is a factor to be considered in determining credibility.[34] Allega-

**30.** *Brown v. Chater,* 87 F.3d 963, 965 (8th Cir.1996).

**31.** *See Bean v. Chater,* 77 F.3d 1210, 1213 (10th Cir.1995) (activities of cooking, dusting, doing laundry, grocery shopping, driving and watching television found inconsistent with a claim of disability); *Castellano,* 26 F.3d at 1029 (activities such as fixing breakfast for himself and his son and doing housework); *Potter v. Secretary of HHS,* 905 F.2d 1346, 1349 (10th Cir.1990) (activities such as knitting, light cleaning, grocery shopping, family laundry, full-time household and parenting); *Wiley v. Chater,* 967 F.Supp. 446, 450–51 (D.Kan.1997) (activities which include housework, meal preparation, visiting friends and playing cards inconsistent with allegedly disabling fatigue and pain).

**32.** *See McKenney v. Apfel,* 38 F.Supp.2d 1249, 1256 (D.Kan.1999) (failing to tell treating physicians about need to lie down daily sup-

ports ALJ's finding that her complaints were not credible); *Brunston v. Shalala,* 945 F.Supp. 198, 202 (W.D.Mo.1996) (the fact that no physician stated plaintiff needed to lie down during day indicated plaintiff was lying down by choice rather than medical necessity); *Schroder v. Sullivan,* 796 F.Supp. 1265, 1270 (W.D.Mo.1992) (lack of documentation regarding plaintiff's need to nap led court to find plaintiff chose to nap when he could remain awake).

**33.** *Williams v. Chater,* 923 F.Supp. 1373, 1379 (D.Kan.1996); 20 C.F.R. § 404.1571 (2002).

**34.** *See Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir.1991); *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988).

tions of disabling pain may be discounted if there are inconsistencies such as minimal or conservative medical treatment.[35]

In determining the credibility of Plaintiff's testimony, the ALJ should also consider the levels of medication taken by Plaintiff and their effectiveness.[36] The ALJ appropriately considered this issue in making his credibility findings and found that "claimant's usage of her pain medications, which appear to be effective, [are] inconsistent with the frequency and degree of pain she allege[s]." (Tr. 25). For the reasons set forth in Section V(B) of this opinion, *supra,* the Court again finds the ALJ properly substantiated his credibility decision in this regard with evidence of record and further finds the record supports the ALJ's conclusion with regard to Plaintiff's use of her medication.

Based on the discussion above, the Court finds the ALJ's credibility findings to be fully supported by substantial evidence in the record as a whole.[37]

## C. Step Three of the Sequential Evaluation Process

Step three of the five-step disability evaluation process provides that if the claimant is not currently engaged in substantial gainful activity and has a medically severe impairment, the fact finder must determine whether the impairment meets or is equivalent to one of a number of impairments listed in the regulations published by the Social Security Administration.[38] If the impairment meets or is equivalent to one of the "listed" impairments, then the fact finder—without considering the claimant's age, education or past work experience—automatically must make a finding that the claimant lacks the residual functional capacity to work.[39]

■ Plaintiff contends the ALJ erred at step three of the sequential evaluation process, arguing he failed to provide specific reasons to support his finding that Plaintiff did not meet or equal a listed impairment. The Court is not persuaded by Plaintiff's argument and, in fact, finds it disingenuous considering that—as the ALJ notes—"at the hearing, Mr. Stubblefield [Plaintiff's attorney at the hearing and on appeal here] stated that he did not propose that claimant should be found to be disabled at the third step." (Tr. 21). Notwithstanding Mr. Stubblefield's declaration, the ALJ noted in his opinion that he did consider whether Plaintiff met Listing 3.02 for chronic pulmonary insufficiency. (Tr. 20). Based on credible testing performed in September 1998, the ALJ ultimately found Plaintiff did not meet Listing 3.02. (Tr. 21).

## D. Residual Functional Capacity

Plaintiff next contends the ALJ erred at step four of the sequential evaluation process by failing to satisfy the requirements of Social Security Ruling 96–8p and the regulations set forth in 20 C.F.R. § 404.1545. More specifically, she argues the ALJ failed to include a narrative discussion of how the medical evidence and other evidence of record supports each conclusion in the assessment of her RFC.

At step four, a claimant bears the burden of proving her medical impairments prevent her from performing work she has

---

**35.** *See Wiley v. Chater,* 967 F.Supp. 446, 451 (D.Kan.1997).

**36.** *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988).

**37.** *Ellison v. Sullivan,* 929 F.2d 534, 537 (10th Cir.1990).

**38.** *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

**39.** *Id.*

performed in the past.[40]   In order to make the ultimate finding that a claimant is not disabled at step four, however, the ALJ is required by the agency's rulings to make specific and detailed predicate findings concerning the claimant's residual functional capacity, the physical and mental demands of the claimant's past jobs, and how these demands mesh with the claimant's particular exertional and nonexertional limitations.[41]

In arriving at an RFC, an ALJ must provide a "narrative discussion describing how the evidence supports" his or her conclusion.[42]   The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.[43]   The ALJ must also explain how any material inconsistencies or ambiguities in the case record were considered and resolved.[44]   The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.[45]   The RFC assessment must not be expressed initially in terms of the exertional categories of "sedentary [or] light"; rather, a function-by-function evaluation is necessary in order to arrive at an accurate RFC.[46]   A failure to make a function-by-function assessment of the claimant's limitations of restrictions could result in the adjudicator

overlooking some of the claimant's limitations or restrictions.[47]

Plaintiff specifically contends the ALJ erred at step four by failing to narratively explain a link between Plaintiff's RFC determination and specific medical evidence in the record.   In this case, the ALJ found that Plaintiff retains the residual functional capacity to:

> perform work involving lifting nor more than 10 pounds frequently or more than 20 pound occasionally, subject additionally to:  a restriction against prolonged walking, but permitting walking around a room or between rooms;  an option to alternate between sitting and standing at least at 30 minute intervals;  a restriction against frequent climbing, bending, stooping, squatting, crouching, crawling, or kneeling, but permitting such postural activities occasionally during a work day;  and a restriction against more than moderate exposure to dust, fumes, odors, smoke, gases and extremes of temperature and humidity.[48]

In reviewing the medical evidence leading up to this RFC finding, the ALJ references several medical reports from Plaintiff's treating and/or examining physicians. For example, the ALJ refers in his opinion to the medical report of Dr. Ernest Neighbor, who evaluated Plaintiff's medical condition in 1994.   (Tr. 18, 227–229).   Summing up his opinion about the status of her back injury, Dr. Neighbor concludes that although Plaintiff has difficulties with back

---

**40.**   *See generally Williams v. Bowen*, 844 F.2d 748, 751 & n. 2 (10th Cir.1988).

**41.**   SSR 96–8p, 1996 WL 374184, at * 5–6 (July 2, 1996);  *see also Winfrey v. Chater*, 92 F.3d 1017, 1023–25 (10th Cir.1996).

**42.**   SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

**43.**   *Id.*

**44.**   *Id.*

**45.**   *Id.*

**46.**   *Id.*, at *3.

**47.**   SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996).

**48.**   (Tr. 29).

pain when she is active, she generally is asymptomatic at rest. (Tr. 227–229).

The ALJ also discusses at length the 1995 medical report of Dr. Brent Koprivica. (Tr. 19). In his report, Dr. Koprivica related that Plaintiff reported to him she could sit, stand and walk for thirty minutes at a time. (Tr. 232). Upon completion of his independent medical evaluation, Dr. Koprivica ultimately stated his opinion that Plaintiff can return to light work as described in the *Dictionary of Occupational Titles (DOT)*, which is defined as "exerting 20 pounds of force occasionally, or up to ten pounds of force frequently, or a negligible amount of force constantly to move objects." [49] (Tr. 237).

The ALJ also referred in his decision to the medical report of Dr. James Henderson, who evaluated Plaintiff's medical condition in September 1998. During the course of the evaluation, Plaintiff reported to Dr. James Henderson that she could sit for sixty minutes, stand for sixty minutes and walk for thirty minutes. (Tr. 244).

■ Contrary to Plaintiff's assertion that the ALJ is silent as to the medical evidence the ALJ considered in formulating the RFC determination, the Court finds that the ALJ specifically identified the medical sources of the limitations he included in the RFC assessment. The Court, therefore, holds that the ALJ provided an adequate narrative discussion of how the medical evidence and other evidence of record supports each conclusion in his assessment of Plaintiff's RFC.

Accordingly, it is hereby ordered that the decision of the Commissioner denying Plaintiff benefits is affirmed. Such decision will dispose of this case, including

Plaintiff's Complaint (doc. 1), which has been considered a petition for review.

IT IS SO ORDERED.

---

**49.** United States Department of Labor, *Selected Characteristics of Occupations Defined in* the *Revised Dictionary of Occupational Titles*, C–2 (4th ed.1991).