**Kathryn E. TRENARY, Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Appellee.**

No. 89–5011.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1989.

Decided March 26, 1990.

Alan W. Weinblatt, St. Paul, for appellant.

Donna L. Calvert, Chicago, for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

ARNOLD, Circuit Judge.

Kathryn Trenary was injured in a car wreck in 1978. Unable to return to work, she applied for disability insurance benefits. Her application was denied. In the last eight years she has repeatedly sought administrative and judicial review of that denial. Mrs. Trenary's case comes to us on appeal from the District Court's [1] grant of summary judgment to Secretary Bowen on her claim. The District Court concluded that the ALJ's finding that Mrs. Trenary was neither physically nor mentally disabled during the period she was covered by

---

1. The Honorable Harry A. MacLaughlin, United States District Judge for the District of Minnesota. By an order dated October 11, 1988, Judge MacLaughlin adopted the March 29, 1988, analysis of the case, recommended findings of fact, and conclusions of law, of the Honorable Janice Symchych, then a United States Magistrate for the District of Minnesota.

social-security insurance was supported by substantial evidence on the record as a whole.

## I.

Mrs. Trenary was thirty-one years old at the time of her accident. She had been a key-punch operator for fourteen years; the last eight of those years, she was self-employed. Mrs. Trenary's prior earnings entitled her to disability insurance coverage under the Social Security Act only through December 31, 1978. This case is about whether Mrs. Trenary's injuries from her accident were disabling prior to that date.

While waiting at a stop sign on February 3, 1978, Mrs. Trenary was rear-ended. Her car sustained about seven hundred fifty dollars worth of damage. Experiencing neck pain and soreness in her left hand, she sought medical attention five days after the accident. A report made on that occasion, and one of an examination about a month later, noted evidence of muscle spasm in Mrs. Trenary's neck and left thumb.

Mrs. Trenary continued to experience pain from her injuries. She had difficulty sitting. Lying down was uncomfortable as well. She also had difficulty twisting her neck and using her left hand. Being overly sensitive to many pain medications, the appellant found some relief with a TENS unit. (That instrument induces muscle relaxation through mild electric currents.)

Mrs. Trenary first consulted her treating physician, Dr. Stanley Esensten, in April of 1978. After a thorough examination (including X-rays), Dr. Esensten diagnosed Mrs. Trenary as suffering from strained muscles in her neck and at the base of her left thumb. Two months later Dr. Esensten concluded that the appellant would be unable to return to her previous work. The strained muscles in her left hand and neck meant that she could not tolerate the extended periods of sitting, the neck twisting, and the finger movements required for data entry.

Mrs. Trenary continued to seek medical advice and evaluation of her condition. In November of 1978 she was examined by Dr. Robert Jeub, a neurologist and psychiatrist. Dr. Jeub found a muscle spasm in Mrs. Trenary's neck, resulting in some restriction of movement. He also noted that Mrs. Trenary was depressed by the financial and personal difficulties attending her accident, injuries, and subsequent unemployment. The appellant was also examined by at least four other doctors prior to her application.[2] A diagnostic pattern emerges from these examinations: tenderness in the neck and left hand, coupled with manifestations of anxiety and stress, with no other discernible evidence of serious injury. In March 1980 Mrs. Trenary applied for disability benefits.

After her application, Mrs. Trenary was examined by two other doctors specializing in emotional problems. In November 1981 the appellant consulted Dr. Stephen Englar, a psychologist. Dr. Englar concluded that Mrs. Trenary had suffered from emotional trauma since March of 1978—several months before her insured status expired. According to his evaluation this trauma resulted in a loss of self-esteem, depression, and nervous agitation. He linked all of these psychological difficulties to the appellant's physical injuries.

Most recently, Mrs. Trenary was examined by a psychiatrist, Dr. Alford Karayusuf. Dr. Karayusuf was charged by Administrative Law Judge (ALJ) Morton Goustin with determining the degree of the appellant's mental impairment, and the effect of that impairment on her physical capacity. He had before him Dr. Engler's 1981 report. He also examined Mrs. Trenary in April 1986. Dr. Karayusuf diagnosed the appellant as suffering from a dysthymic disorder: a severe state of de-

---

**2.** A partial listing of these visits (not including those discussed in the text) would include:

October 1978—Dr. Peter Koontz, a general practitioner;

July 1979—Dr. Donald Erickson, a neurosurgeon;

November 1979—Dr. Marlan Strefling, an orthopedic surgeon;

March 1980—Dr. Miguel Fiol, a neurologist.

pression. He characterized the appellant as suffering from feelings of worthlessness, as being preoccupied with pain, and as manifesting anger and resistance toward others. He concluded that Mrs. Trenary's condition precluded her from functioning effectively in many work-related situations. In his opinion she would be unable to interact with supervisors, co-workers, or customers, or deal with stress. ALJ Goustin explicitly inquired when, in Dr. Karayusuf's opinion, the appellant's emotional condition became disabling. Noting that Mrs. Trenary's psychiatric problems developed over time, Dr. Karayusuf replied that in his opinion the appellant did not become disabled until July 1979.

## II.

Mrs. Trenary's disability application, made during the spring of 1980, has traveled a circuitous path to our Court. Her claim was initially denied; that decision was reconsidered and confirmed by the Social Security Administration. In June of 1981, Charles Frisch, the first ALJ to hear her claim, found that she was not disabled. The Appeals Council affirmed his decision. Mrs. Trenary then took her case to federal court. In 1984, Magistrate Brian Short remanded her application for further administrative action—no vocational expert had testified regarding the appellant's ability to fill then-available jobs. In 1984 ALJ Melvin Werner found that Mrs. Trenary was not disabled. The next year the Appeals Council modified Judge Werner's findings but affirmed his decision. In December of 1985 Magistrate Symchych recommended further reconsideration of Mrs. Trenary's claim on the basis of the newly adopted mental-impairment regulations.

Another round of hearings and appeals followed. ALJ Morton Goustin denied Mrs. Trenary's claim in April of 1987. Judge Goustin found that though Mrs. Trenary's mental and physical conditions may now be disabling, that was not the case in December 1978 when the appellant's insured status expired. Relying on the testimony of a vocational expert, the ALJ found that though Mrs. Trenary's injuries (while she was insured) prevented her from returning to her job as a key-punch operator, there were many other jobs then available that she could have performed. The Appeals Council affirmed ALJ Goustin's decision. Mrs. Trenary then returned to federal court. The District Court subsequently adopted Magistrate Symchych's second Report and Recommendation on the appellant's claim. The District Court granted summary judgment for the Secretary. This case is Mrs. Trenary's appeal from that judgment.

## III.

Mrs. Trenary forwards three claims on appeal. She argues that the Magistrate used the wrong standard of review, that the finding of no physical or mental disability during her insured period is not supported by substantial evidence, and that the hypothetical posed to the vocational expert failed to portray her limitations adequately. Her first argument is insubstantial. It is abundantly clear that Magistrate Symchych reviewed this claim using the correct standard of review: substantial evidence on the record as a whole. The Magistrate's short-hand reference to mere "substantial evidence" was not error. We consider the appellant's remaining contentions in turn.

The appellant finds no substantial evidence in the record as a whole to support Judge Goustin's finding that she was not disabled. Rather, Mrs. Trenary asserts that substantial evidence supports the conclusion that she is both mentally and physically disabled. We disagree. ALJ Goustin considered, and Magistrate Symchych reviewed, the appellant's claim under the familiar five-step disability analysis established by regulation and approved by the Supreme Court.[3] 20 C.F.R. § 404.1520;

---

3. The five steps are:

(1) If the claimant is engaged in substantial gainful activity, disability benefits are denied.

(2) If the claimant is not engaged in substantial gainful activity, her medical condition is evaluated to determine whether her impairment, or combination of impairments, is

*Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The point, of course, of that analysis is to ascertain whether Mrs. Trenary's impairments prevented her from engaging in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A).

The ALJ's consideration of the appellant's claim focused on steps 3 and 5 of the disability analysis. Step 3 compares the claimant's impairments with those the Secretary lists as severe enough to be automatically disabling. ALJ Goustin found that Mrs. Trenary's muscle strain and tenderness in neck and thumb failed to establish a listed physical impairment. The District Court affirmed, finding substantial evidence in the whole record to support this conclusion. Mrs. Trenary does not appeal this part of the ALJ's determinations. The ALJ also found, however, that Mrs. Trenary suffered from a mental impairment— an affective disorder evidenced by anger and unstable mood—during her insured period. But he further concluded that she failed to establish the requisite severity, of suffering and of functional limitations from that suffering, to satisfy the requirements of a listed mental impairment. The District Court concluded that substantial evidence supported these determinations. We agree.

■ There is little doubt Mrs. Trenary's current emotional state satisfies the disability standard. That, however, is not the question presented. We are asked instead to consider the finding that Mrs. Trenary's emotional condition was not disabling by December 1978. In support of her claim of error, the appellant points to two pieces of evidence: Dr. Engler's 1981 conclusion that she had been depressed for three years and Dr. Jeub's 1978 examination finding evidence of depression. Both ALJ Goustin

and Magistrate Symchych considered and accepted this evidence. Depression, however, is not necessarily disabling. The ALJ and the Magistrate also considered and accepted Dr. Karayusuf's conclusion—supported by the most searching psychiatric examination undergone by the appellant— that Mrs. Trenary's escalating depression did not become debilitating until July 1979.

Since the critical question was the timing and extent of appellant's emotional difficulties, the ALJ properly focused on the functional limitations caused by those difficulties. Noting Mrs. Trenary's anger and unstable mood (established by her family's affidavits and her own testimony), the ALJ nonetheless concluded that these symptoms were not disabling. ALJ Goustin was guided to this decision by the range of considerations embodied in the new mental-impairment regulations. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 112.00 et seq. ALJ Goustin found only "moderate" restriction of daily activities and "slight" difficulties in maintaining social interaction. As the District Court concluded, the ALJ acted correctly; he considered—but found wanting—all the offered evidence regarding the functional limitations caused by the claimant's depression.

The ALJ also recognized, however, that Mrs. Trenary's physical and emotional condition caused her pain and limited her activities. He specifically found, agreeing with her treating physician, that she was unable to return to her former employment as a key-punch operator. In doing so, the ALJ acknowledged Mrs. Trenary's subjective complaints of pain. He did not, as the appellant asserts, completely reject her complaints. Rather, ALJ Goustin partially discounted those complaints—for good reasons.

medically severe. If the impairment is not severe, benefits are denied.

(3) If the impairment is severe, it is compared with the listed impairments the Secretary acknowledges as precluding substantial gainful activity. If the impairment is equivalent to one of the listed impairments, the claimant is disabled.

(4) If there is no conclusive determination of severe impairment, then the Secretary determines whether the claimant is prevented from

performing the work she performed in the past. If the claimant is able to perform her previous work, she is not disabled.

(5) If the claimant cannot do her previous work, the Secretary must determine whether she is able to perform other work in the national economy given her age, education, and work experience.

*Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987) (paraphrasing 20 C.F.R. Sec. 404.1520).

[redacted] ALJ Goustin refused to accord Mrs. Trenary's testimony conclusive weight because it had changed. The record reveals inconsistencies in her reports of pain and functional limitations, of pre-injury income, and of educational level. The ALJ also refused to accord conclusive weight to the testimony of family and friends regarding Mrs. Trenary's condition. He found this evidence long on general effects and short on specific instances of Mrs. Trenary's functional limitations. In sum, Judge Goustin rightly considered all the evidence of Mrs. Trenary's pain and the impact of that pain on her activities. *Polaski v. Heckler,* 739 F.2d 1320, *supplemented,* 751 F.2d 943 (8th Cir.1984), *vacated,* 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986), *adhered to on remand,* 804 F.2d 456 (8th Cir.1986), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987).

[redacted] Since Mrs. Trenary's condition precluded her former work, but was not so severe as to qualify as a listed impairment, her disability became a step-5 question of what available work she could perform. Governing precedent allows an ALJ to answer that question by propounding a hypothetical encapsulating the claimant's impairments to a vocational expert. The expert then speaks to the availability, *vel non,* of satisfactory other work for the claimant. See *Driggins v. Bowen,* 791 F.2d 121 (8th Cir.1986).

[redacted] ALJ Goustin relied upon vocational expert Jane Moncharsh for his conclusion that numerous such jobs existed in the economy when Mrs. Trenary was injured. Mrs. Trenary now challenges the ALJ's hypothetical. She specifically alleges that the hypothetical failed to incorporate her subjective feelings of pain. The expert's opinion, the appellant contends, thus fails to support the ALJ's finding of available and performable other work. The District Court found the hypothetical adequate. We agree.

ALJ Goustin's hypothetical adequately summarized Mrs. Trenary's abilities and impairments—including limitations on her capacity caused by pain. The hearing transcript reveals that the ALJ considered the appellant's complaints of pain, as well as the functional limitations caused by her depression. T. 55–57. Expert Moncharsh acknowledged those complaints and limitations in her responses. Jobs requiring twisting, turning, and stooping were eliminated. Jobs requiring concentration and interaction with others were eliminated. High-stress jobs were also eliminated. T. 67–70. Only jobs allowing many alternative positions, that would accommodate Mrs. Trenary's inability to remain in one position for long, were considered. T. 55–56. There was no error in ALJ Goustin's hypothetical, or expert Moncharsh's responding testimony, regarding the many other jobs available to the appellant.

The appellant's residual ability, at least through December of 1978, to engage in some substantial gainful activity determines her claim for disability benefits. The District Court's grant of summary judgment to Secretary Bowen is therefore affirmed.