**Murray RAPPOPORT, Appellant,**

v.

**Louis SULLIVAN, Secretary of Health and Human Services, Appellee.**

No. 90–5513.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1991.

Decided Aug. 28, 1991.

William L. Orr, Minneapolis, Minn., for appellant.

Donna L. Calvert, argued (Jerome G. Arnold, Mary J. Atmore, Donna Morros Weinstein, Richard A. Urbin and Donna L. Calvert, on brief), Chicago, Ill., for appellee.

Before JOHN R. GIBSON, Circuit Judge, and FLOYD R. GIBSON and ROSS, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

Claimant Murray Rappoport appeals from the district court's order affirming the denial of his application for disability insurance and supplemental security income benefits. We affirm.

Claimant filed applications for disability benefits and supplemental security income in September, 1987, claiming that he had been unable to work since June 5, 1987 because of angina and heart disease. These applications were denied initially and upon reconsideration. At claimant's request, an administrative hearing was held on August 11, 1988. The Administrative Law Judge (ALJ) found that Rappoport retained a residual functional capacity to perform a limited range of sedentary work. The ALJ additionally found that a significant number of jobs were available in the economy for an individual suffering from claimant's disabilities, and that claimant, therefore, was not disabled within the meaning of the Social Security Act. The Appeals Council denied Rappoport's request for review. He then filed this action.

## BACKGROUND

Claimant was born on March 26, 1943, and has the equivalent of a high school education and a work history as a city bus driver. Claimant suffered a heart attack on February 21, 1986. After a period of rehabilitation, he returned to work and was assigned to light duty work. In December 1986, he started driving a bus again on a full-time basis, but stopped in June 1987 due to angina attacks. He made additional attempts to return to sedentary work, but soon returned to the hospital due to continuing angina attacks. Claimant has not attempted to return to work since June 5, 1987.

The significant medical history reveals that on October 2, 1987, claimant was examined by heart specialist Margo Tolins, M.D., who determined that claimant suffered from obstructive coronary artery disease and probably coronary artery spasm. Dr. Tolins reported that although claimant continued to complain of several episodes of chest discomfort each day, "[p]hysical examination was entirely within normal limits." On October 5, 1987, an angiography was performed which revealed mild to moderate obstructive coronary disease, but it was noted that "his symptoms are difficult to correlate to his anatomy."

Dr. Jeffrey W. Chell, claimant's treating physician, reported on February 3, 1988 that claimant continued to have intermittent episodes of angina despite maximal medical therapy. Although claimant's objective testing had been "equivocal," Dr. Chell stated that he would nonetheless support claimant's decision to seek disability benefits. On a medical examination form provided by the Minnesota Department of Human Services, Dr. Chell stated that claimant was physically incapacitated due to coronary artery disease which would cause an inability to work either permanently or temporarily and that he was not employable at that time.

On July 26, 1988, Dr. Tolins reported that based on previous testing, claimant was found to have "mild heart disease," and concluded that claimant had symptoms which are out of keeping with the extent of his coronary artery disease. Dr. Tolins stated that "I have talked with the patient's wife who feels that he maximizes his symptoms." Dr. Tolins decreased claimant's medication and recommended psychiatric counseling. In a subsequent report, on August 5, 1988, Dr. Tolins stated that

claimant had no objective evidence of ischemic heart disease with chest pain of cardiac origin and that claimant's description of his chest pain was not clinically characteristic of ischemic heart disease. Dr. Tolins nonetheless concluded that claimant's activities were limited by his chest pain.

Neutral medical advisor Dr. Andrew M. Steiner testified at the administrative hearing that claimant's chest pain was out of proportion to the medical findings and that while claimant might be limited to some degree by chest pain, he could perform sedentary work that was not highly stressful.

Claimant testified that on a typical day he spends most of his time watching television and occasionally he walks his dog. He stated that he does no housework, and although he occasionally does the grocery shopping with his wife, the heaviest item he can lift is a five pound bag of dog food. Claimant stated that he sometimes gets angina attacks when watching an exciting movie or sports event.

On January 6, 1989, following the administrative hearing, the ALJ denied claimant's application for benefits. The ALJ found that claimant had a history of severe past myocardial infarction and that he suffered from mild coronary artery disease which prevented him from performing his past work. However, the ALJ determined that claimant did not suffer a listed impairment, was not disabled by pain, and could perform light work. Accordingly, benefits were denied. The decision of the ALJ was affirmed by the district court on August 8, 1990.

## DISCUSSION

Rappoport asserts several challenges to the ALJ's ruling, including a claim that his subjective complaints of pain were not properly reviewed under the standards of *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir.1984) (subsequent history omitted). We must uphold the ALJ's denial of benefits if it is supported by substantial evidence on the record as a whole. *Burns v. Sullivan*, 888 F.2d 1218, 1219 (8th Cir.1989) (per curiam).

Under *Polaski*, the absence of an objective medical basis which supports the subjective complaints of pain is just one factor to be considered in evaluating the credibility of a claimant's subjective complaints of pain. *Polaski, supra*, 751 F.2d at 948. The ALJ must also consider the claimant's prior work record and observations by third parties and treating and examining physicians relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id.* Although the ALJ may disbelieve a claimant's allegations, credibility determinations must be supported by substantial evidence. *See Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988). However, where the evidence as a whole demonstrates inconsistencies, subjective complaints of pain may be discounted. *Burns, supra*, 888 F.2d at 1220.

Here, the medical evidence shows that Rappoport's physicians reported that the symptoms complained of were not characteristic of coronary artery disease. Dr. Tolins stated that the symptoms were out of keeping with the extent of claimant's coronary artery disease and that claimant's wife stated she believed her husband maximized his symptoms. Dr. Tolins recommended that claimant be taken off the anti-ischemic medications and pursue psychiatric counseling. Dr. Chell similarly reported that the diagnosis was chest pain of unknown etiology, with the possibility of malingering or psychogenic sources.

Aside from the absence of objective medical evidence which corroborates the claimant's allegations of disabling pain, the ALJ noted that there are additional inconsistencies with respect to the claimant's subjective complaints. For example, Rappoport stated in a written report filed on September 18, 1987 that his daily activities included vacuuming, walking approximately 45 minutes each day, visiting with friends, and shopping with his wife. In

January 1988 claimant indicated in a hand-written statement attached to his request for reconsideration that he and his wife walked around shopping malls for exercise a couple of times per week. The ALJ contrasted this information with that presented at the August 11, 1988 hearing, at which claimant testified that he does nothing around the house except watch television and occasionally walks the dog. The ALJ noted that this rapid deterioration in claimant's physical condition was not accompanied by any corresponding change in the medical evidence.

After carefully considering each of the factors set forth in *Polaski,* the ALJ concluded that Rappoport's subjective complaints of pain were not credible given the inconsistencies in the evidence. Based on the foregoing we conclude that the ALJ properly considered the *Polaski* factors in finding the claimant's complaints of pain not credible.

We also reject Rappoport's argument that the ALJ failed to consider testimony of Helen Rappoport, claimant's wife, as required by *Smith v. Heckler,* 735 F.2d 312, 317 (8th Cir.1984). The ALJ noted that in reaching his decision he conducted "a careful and thorough evaluation of the entire record in this matter, including the testimony received at the hearing." More-over, Helen Rappoport's testimony regarding claimant's limitations since his heart attack and his visits to the hospital is not in dispute. Mrs. Rappoport's testimony that she believes her husband when he complains of chest pain goes to Rappoport's credibility and is within the province of the ALJ to determine. *See Andrews v. Schweiker,* 680 F.2d 559, 561 (8th Cir.1982). Although Mrs. Rappoport testified that she agreed with her husband, she also reported to Dr. Tolins that she felt her husband "maximizes his symptoms."

█ Finally, the claimant argues that the hypothetical question posed to the vocational expert was flawed because the ques-tion failed to set forth all of his impair-ments. We do not agree. This court has often held that testimony elicited by hypo-thetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision. *See, e.g., Ekeland v. Bowen,* 899 F.2d 719, 722 (8th Cir.1990). The hypothetical question, how-ever, need only include those impairments accepted by the ALJ as true. *Wingert v. Bowen,* 894 F.2d 296, 298 (8th Cir.1990).

The ALJ's hypothetical question to the vocational expert included the facts that claimant could not lift more than ten pounds, could walk or stand only for short periods of time, and could not do work which was more than low stress in nature. This question included all of Rappoport's impairments that were supported by sub-stantial evidence. The additional impair-ments posited by claimant, including allega-tions of subjective complaints of pain, were discredited by the ALJ, and we have con-cluded that the ALJ's credibility determina-tions are supported by substantial evidence on the record as a whole.

In response to the hypothetical question, the vocational expert opined that there were over 3,000 jobs in the economy which claimant would be able to perform. The vocational expert then noted as significant the fact that claimant left his last job as an envelope stuffer after two days because of chest pain. The expert stated that if claim-ant was unable to this job, which was the type of sedentary low stress work within claimant's capabilities, then there were no jobs in the economy that claimant could perform.

Notwithstanding this testimony, the dis-trict court ruled it was clear that the ALJ did not accept claimant's reasons for leav-ing the envelope stuffing job.[1] The court held that the ALJ's hypothetical question, which assumed that claimant had a residual functional capacity which allowed him to

---

1. The record establishes that Rappoport left his job as an envelope stuffer after two days be-cause he experienced chest pain that was not relieved by his nitroglycerin. It was discovered that this nitroglycerin was not potent and when potent medication was administered, Rappo-port's chest pain was relieved. There is no basis in the record to conclude that once Rappoport's medication was corrected, he would be unable to perform sedentary low stress work.

perform sedentary jobs with restrictions, was supported by substantial evidence in the record as a whole. Based on this finding, the district court held that the vocational expert's testimony that a significant number of jobs existed which claimant could perform supported the ALJ's determination that claimant was not disabled. The ALJ's reliance on the vocational expert's testimony to conclude that claimant was not disabled was proper.

## CONCLUSION

Based on the foregoing, we conclude that the Secretary's decision denying claimant's benefits is supported by substantial evidence in the record as a whole and accordingly we affirm that decision.[2]

---

**2.** We also reject Rappoport's argument that the Secretary's objection to the magistrates report and recommendation was untimely and that, therefore, the Secretary forfeited his right to seek review. According to Rappoport, due to the Secretary's untimeliness, the magistrate's report and recommendation must become the judgment of the district court. As the Supreme Court has stated, however, "[t]he district judge is free to follow [a magistrate's recommendation] or wholly to ignore it.... The authority— and the responsibility—to make an informed,

final determination, we emphasize, remains with the judge." *Mathews v. Weber,* 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976). There is no merit to the claimant's argument that the Secretary's objections were untimely, and, even if those objections were out of time, the district court would not be bound by the magistrate's recommendation.