**Richard H. STARR, Appellant,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Appellee.**

**No. 92–1697.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 2, 1992.

Decided Dec. 31, 1992.

Mark Falk, Rapid City, SD, argued, for appellant.

Diana Ryan, Rapid City, SD, argued (Kevin V. Schieffer and Diana Ryan, Rapid City, SD and Ronald S. Ludedmann, Thomas A. Nelson, Jr. and Deana R. Ertl–Lombardi, Denver, CO, on the brief), for appellee.

Before WOLLMAN, Circuit Judge, LAY, Senior Circuit Judge, and BEAM, Circuit Judge.

LAY, Senior Circuit Judge.

Richard Starr appeals the judgment of the district court[1] affirming the Secretary's denial of social security disability benefits. We affirm.

## I. BACKGROUND

Richard Starr is a 57–year–old resident of Rapid City, South Dakota. He has an eighth grade education and has spent most of his life as a manual laborer. Starr worked many years as an equipment operator for the City of Rapid City and later operated his own septic truck. In the early 1980's, Starr developed breathing problems. Starr also complained of back problems, arthritis and gout.

Starr claims permanent disability due to shortness of breath, arthritis and gout since July 2, 1986. Starr was examined by Dr. Alvin Wessel on March 17, 1988. The results of the pulmonary function studies indicated that Starr had progressive chronic obstructive pulmonary disorder (COPD). The Secretary of Health and Human Services denied Starr's application for benefits. An administrative hearing was held on January 31, 1990. The ALJ determined that Starr had not engaged in any substantial gainful activity since July 2, 1986. He found, however, that although Starr could not return to his prior work as a truck driver, he could have engaged in a significant number of "light occupations" in the national economy prior to March 17, 1988. Starr was awarded benefits based upon his onset of disability on March 17, 1988. The district court found substantial evidence on the record as a whole supported the Secretary's decision. Starr now appeals claiming that his benefits should have commenced as of July 2, 1986.

## II. DISCUSSION

■ The question before this Court is whether the claimant was disabled within the meaning of the Act, prior to March 17, 1988.

Starr argues that the ALJ erred in determining that he retained residual capacity to engage in light work prior to March 17, 1988. He claims that there was not substantial evidence on the record as a whole to support this finding. The Secretary has defined light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. 404.1567(b) (1991). Starr argues that there was no affirmative evidence in the record, either testimonial or documentary, that he was capable of performing any of these activities. Indeed, he argues that the only evidence submitted on these issues was his direct testimony and that of his wife, which demonstrated that he could not engage in light work. The claimant asserts that this testimony established that his chronic obstructive pulmonary disorder, his degenerative arthritis and gout, severe back injury and resultant pain, and alcoholism all combined to severely limit his ability to perform work-related functions prior to March 1988.[2]

We agree with the district court that substantial evidence exists to support the ALJ's finding that the claimant could perform some type of light work in the national economy prior to March 17, 1988. With regard to the claimant's breathing problems, a 1986 pulmonary test taken at Ft. Mead Hospital indicated that Starr had only mild chronic obstructive pulmonary disorder, as compared to his March 1988

---

**1.** The Honorable Andrew W. Bogue, United States District Judge for the Western District of South Dakota.

**2.** Starr testified that he had difficulty lifting objects (R. 69–70), that walking or standing were difficult and aggravated his back pain (R. 59), and that he had trouble pushing or pulling controls (R. 59).

test, which indicated the pulmonary problems were much worse. The claimant's own testimony indicated that he had responded positively to a bronchodilator in 1986, but did not find relief from the same treatment in 1988. Starr in fact had not sought any additional treatment for his alleged disabling lung condition in the two years between his examination in July 1986 and the examination in March 17, 1988 when the condition was diagnosed as progressive.

Substantial evidence in the record also supports the ALJ's finding that the claimant's pain associated with back and gout problems were not debilitating. The record contains no medical evidence of treatment for either of these problems prior to 1988. At the time of Dr. Wessel's examination in March 1988, Starr had good muscle tone, was able to walk unaided, had good range of motion, and showed no signs of suffering from rheumatoid arthritis.

■ Starr argues that the district court erred by improperly discounting his subjective complaints of pain in violation of the principles set forth in *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir.1984). However, subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Id.; Conley v. Bowen*, 781 F.2d 143, 147 (8th Cir.1986). We conclude that the ALJ properly considered Starr's subjective complaints of pain under *Polaski*, finding that his testimony and that of his wife was "not fully credible to the extent [plaintiff] allege[d] disability prior to March 17, 1988." The ALJ did not rely solely on the lack of medical evidence. He noted, for example, that Starr was only using aspirin at that time for pain relief which is not indicative of someone who is in severe dis-

abling pain. The ALJ also noted that Starr worked in 1987.[3]

■ We conclude that the ALJ was also correct in finding the record "devoid of any reference to the disabling effects of Plaintiff's alcoholism." The mere presence of alcoholism is not necessarily disabling. *See Metcalf v. Heckler*, 800 F.2d 793 (8th Cir.1986). In *Adams v. Weinberger*, 548 F.2d 239 (8th Cir.1977), we noted that in order to establish a disability predicated on alcoholism, the claimant must show: 1) that he has lost self control to the point of being "impotent to seek and use means of rehabilitation," and 2) that his disability is encompassed by the Act. *Id.* at 245. Although Starr may have had a drinking problem in the past, there was no medical or psychological evidence of alcoholism so functionally limiting as to preclude any substantial gainful activity. *See, e.g., Lubrinski v. Sullivan*, 952 F.2d 214, 216 (8th Cir.1991).

■ Finally, we hold that substantial evidence also supports the ALJ's conclusion that Starr was physically capable of performing some type of light work in the national economy prior to March 17, 1988. Starr challenges the use of a hypothetical question in the examination of Dr. Sexton, the vocational expert. A vocational expert's response to a hypothetical question provides substantial evidence where the hypothetical question sets forth with reasonable precision the claimant's impairments. *See Jelinek v. Bowen*, 870 F.2d 457, 461 (8th Cir.1989). Dr. Sexton testified that a significant number of jobs existed in the national economy that Starr could perform despite his impairment.[4] The expert included in his list jobs such as order filler, machine feeder, packaging machine

---

**3.** Although this work was not sufficient to amount to substantial gainful activity, we nevertheless find it determinative of whether he had the capacity to· work prior to March 17, 1988. Indeed, Starr earned more in 1987 than he had in any of several preceding years. (Tr. 189).

**4.** The vocational expert was asked:
  If we were to assume that at some point over the period of time that I must consider here that we are dealing with an individual with an eighth-grade education and the work experience of the [plaintiff], that exertionally

he had the ability to perform limited work, and I want to assume by limited light work I am referring to work that did not require continuous standing or walking throughout the workday but allowed for some flexibility of position; I would want you to assume also that the individual would function best in an environment that did not include significant amounts of airborne irritants, dust, fumes, smoke and these kinds of things; I would want you to assume also that the individual because of arthritis in his hands—or affecting his body would not allow continuous fine—

 

operator, checker, assembler, inspector, line attendant and table worker.

Starr claims that the ALJ denied him due process in examining Dr. Sexton through written interrogatories after the hearing was closed. Under the facts here, we do not find any due process violation. These interrogatories were simply intended to obtain information regarding whether the jobs identified by the vocational expert existed in significant numbers and whether that list of jobs was intended to be an exhaustive list or examples only. Starr was given every opportunity to cross examine the vocational expert at the hearing and to submit any additional questions in the form of written interrogatories.

## III. CONCLUSION

Based on a review of the record, we conclude that the Secretary's decision denying benefits to Starr prior to March 17, 1988 is supported by substantial evidence in the record as a whole. Accordingly, we affirm the judgment of the district court denying benefits to the claimant prior to March 17, 1988.

Judgment affirmed.

---

functions requiring finger dexterity, but that the individual would be capable of performing tasks with his hands with gross movements and, of course, with the limited lifting and carrying that falls within that light work category, that he would be able to do that, but also would not be able to perform positions that required continuous grasping or where a

firm grip over a prolonged period of time would be an integral part of those positions. Assuming those matters, what is your opinion as to whether there are jobs or occupations in existence that would accommodate those limitations?

Record at 81.