Thomas L. CRAIG, Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant.

No. 95–1155–CV–W–4.

United States District Court,
W.D. Missouri,
Western Division.

Oct. 25, 1996.

Hurley D. Mahan, Cason, Edgett & Mahan, Clinton, MO, for plaintiff.

Edward H. Funston, Jerry L. Short, United States Attorney's Office, Kansas City, MO, for defendant.

### AMENDED ORDER

FENNER, District Judge.

Plaintiff, Thomas L. Craig, seeks judicial review of the decision of defendant, Shirley S. Chater, Commissioner of Social Security (the Commissioner), denying plaintiff's application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. Plaintiff's application was denied initially and on reconsideration. Thereafter, a hearing was held before an administrative law judge (ALJ), and plaintiff's application was again denied. The Appeals Council of the Social Security Administration then vacated the decision of the ALJ and remanded the case for further proceedings.

On November 22, 1994, following a supplemental hearing, an ALJ rendered a decision in which he found that plaintiff was not under a "disability" as defined in the Social Security Act. The Appeals Council denied plaintiff's request for review. Thus, the decision of the ALJ on November 22, 1994, stands as the final decision of the Commissioner.

The record reflects that on March 13, 1985, James H. Whitaker, M.D., an orthopedic specialist, examined plaintiff. Six weeks earlier, plaintiff sustained an on-the-job injury to his left groin after slipping and falling. At the time of the examination, plaintiff had no complaints of left groin pain. X-rays of the pelvis and lumbosacral spine were negative. The diagnosis was muscle strain. Dr. Whitaker opined that plaintiff could be gainfully employed, but should avoid twisting. Physical therapy was recommended.

Mark Zukaitis, M.D., examined plaintiff on July 19, 1985. Motor and sensory examination was grossly normal. Examination of the groin and thigh showed no evidence of localized tenderness. The etiology of plaintiff's pain was lumbar nerve root irritation. A lumbar CT scan on September 25, 1985, showed a left L4–5 small herniated disc.

Plaintiff was seen by Mark Brodkey, M.D., on October 8, 1985. A lumbar myelogram showed mild to moderate bulging at L4–5 without evidence of nerve root sleeve impingement or cutoff. An excretory urogram was normal with a moderate post void residue. According to Dr. Brodkey, plaintiff had not had any urinary tract infections and did not have any trouble urinating. An EMG study on October 16, 1985, was normal. John W. Cashman, M.D., indicated on October 16, 1985, that plaintiff's neurologist and orthopedist found no objective evidence supporting his complaints. According to Dr. Cashman, plaintiff should avoid work involving bending, twisting, one time lifting of 50 pounds, and repetitive lifting of more than 25 pounds. Plaintiff was to start flexion exer-

cises. Dr. Cashman said plaintiff's difficulties were more likely to get better than worse. On October 23, 1985, Dr. Cashman said plaintiff's essential complaint was left groin pain. He also said objective findings had been few and far between.

Dr. Whitaker indicated on October 21, 1986, that extensive medical examinations, including complete neurological and urological, as well as internal and orthopedic evaluations failed to document any objective findings. Robert L. Pierron, M.D., examined plaintiff on February 4, 1987, for complaints of back and groin pain. Physical examination revealed that plaintiff was able to bend forward with little difficulty, had no pain on direct palpation of the lumbar spine, and no pain during forward flexion. Deep tendon reflexes were intact, straight leg raising was negative, and there were no signs of acute sciatica. There was not enough evidence of nerve damage and plaintiff had no loss of strength or sensation which required additional examinations.

R. Steve Foster, M.D., indicated in March 1987, that plaintiff's urinary frequency was good. In June 1987, plaintiff's urinary frequency increased when he stopped taking medication. On July 1, 1987, plaintiff's urethra was essentially normal. The prostate was normal except for the membranous portion which showed dark calcifications consistent with prostatic calcifications. The bladder was without mucosal lesions, traveculations, or foreign bodies. Plaintiff was treated as if he had prostate pain. On July 8, 1987, plaintiff's pain was gone.

Plaintiff was evaluated for prostatis on February 8, 1991. Urinalysis was negative. Plaintiff requested Flexeril for his prostate. He was told that Flexeril was not used for prostate problems. Instead, he was given ibuprofen. J.B. Astik, M.D., performed a consultative examination of plaintiff on February 25, 1991. One to two chiropractic treatments per month provided plaintiff with some relief. According to the report, plaintiff tried to obtain odd jobs when he could. Physical examination showed full range of motion in the cervical spine. There was some muscle spasm in the paravertebral area in the lumbar spine as well as in the lower dorsal spine. There was no point tenderness over the spine and no evidence of muscle atrophy in the lower extremities.

Urologist W. Tad Wilson, M.D., indicated on January 15, 1993, that there was no evidence of chronic prostatodynia or prostate irritation. A renal sonogram was negative. On January 28, 1993, Dr. Wilson indicated that plaintiff's symptoms were markedly better. Plaintiff had decreased his caffeine intake and cut back on consuming spicy foods. According to Dr. Wilson, plaintiff looked "as good as he has ever been."

Dr. Foster indicated in January 1993, that plaintiff canceled a battery of tests stating that he had "other more important things to take care of right now." Dr. Foster saw plaintiff on February 7, 1994, for complaints of back pain. He said his children walked on his back and he felt it pop in and out. Some nocturnal irritative voiding symptoms were noted. Physical examination showed no real spasm in the back muscles.

Harry G. Miller, M.D., performed a consultative examination of plaintiff on March 17, 1994. Dr. Miller diagnosed plaintiff with chronic pain syndrome and said plaintiff was incapable of gainful occupation. Thoracic spine x-rays showed no evidence of compression fracture or disc space narrowing. X-rays of the lumbar spine were normal.

Ian L. Belson, D.O., performed a consultative neurological examination of plaintiff on August 23, 1994. Plaintiff's clinical neurological evaluation was basically normal with no overt evidence of ongoing central or peripheral nervous system dysfunction. There was no evidence of lumbar radiculopathy. He most likely had chronic pain syndrome made worse by deconditioning. According to Dr. Belson, plaintiff's chance for a successful future was through participation in a comprehensive chronic pain treatment program and vocational rehabilitation.

An administrative hearing was held on July 22, 1994. Plaintiff alleged disability since March 1, 1990. Plaintiff testified that he was 39 years old and had a high school education. Plaintiff complained of upper and lower back pain which was aggravated by

excessive movement and activity. He claimed that the pain radiated down through his left leg and foot. He also complained of shoulder and neck problems and headaches. Plaintiff complained of sharp groin pain and prostate problems. He said he had to urinate frequently, two to four times an hour. This lasted, on average, two weeks. Plaintiff claimed that 10 to 14 days a month he had to lie down for hours at a time. He also claimed that two to three times a month he was unable to get out of bed.

Plaintiff testified that he took hot baths and used aspirin, Extra Strength Tylenol, and Flexeril for his pain. He took Flexeril for up to one week each month, which reduced his prostate irritation. He said Flexeril caused grogginess and interfered with his concentration. Plaintiff claimed that he had not received more medical treatment because he could not afford it. Plaintiff estimated that he could sit for 30 minutes before changing positions. On his worst days, he claimed that he could not sit at all. He estimated that he could walk 50 to 60 feet. He claimed to have trouble twisting and bending from the waist. The most he lifted was a bag of sugar, a gallon of milk, or a pitcher of tea. He claimed to have difficulty manipulating stairs. He claimed to have trouble sleeping at night.

Plaintiff testified that his activities included washing dishes, fixing breakfast, and straightening the house. In a January 1991 disability report, plaintiff reported that his activities included some cooking, performing minor odd jobs, listening to music, playing Nintendo, building models, watching television, visiting with family and friends, and driving when necessary.

Plaintiff's wife provided corroborating testimony. She knew when plaintiff was in pain because it showed on his face and he was irritable. She said plaintiff spent a lot of time in his recliner. Three to four times a month, she helped plaintiff dress. She said plaintiff had some difficulty lifting a bag of sugar and a gallon of milk.

Karen Sherwood, a vocational expert, also testified. She was asked a hypothetical question based on an individual of plaintiff's age, education, and work experience. The individual could lift and carry up to 10 pounds maximum, and three to five pounds frequently. The individual would have difficulty with prolonged sitting and would need the opportunity to either sit or stand during the course of the work day. Ms. Sherwood testified that plaintiff could perform the jobs of surveillance system monitor (710 positions in Missouri and 75,000 in the United States), information clerk (540 and 27,200), cafeteria food checker (3,200 and 165,000), and electronics assembler (780 and 29,300).

■ The issue is whether the final decision of the Commissioner is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g).

Judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) is limited to whether there is substantial evidence in the record as a whole to support the decision of the Commissioner. *Siemers v. Shalala,* 47 F.3d 299, 301 (8th Cir.1995). The court's role is not to reweigh the evidence or try the issues de novo. *McClees v. Shalala,* 2 F.3d 301, 302 (8th Cir.1994). When supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable person might accept as adequate to support a decision. *Id., Onstead v. Sullivan,* 962 F.2d 803, 804 (8th Cir.1992).

The Commissioner's regulations governing determinations of disability set forth a five-step sequential evaluation process which the Commissioner must use in assessing disability claims. 20 C.F.R. § 404.1520. A claimant has the burden of proving disability by establishing a physical or mental impairment which will persist for at least twelve consecutive months and prevents him from engaging in substantial gainful activity. *Wiseman v. Sullivan,* 905 F.2d 1153, 1155 (8th Cir.1990). Plaintiff is required to show the existence of a disability on or before December 31, 1990, the date his insured status expired. *Trenary v. Bowen,* 898 F.2d 1361, 1364 (8th Cir.1990).

After evaluating all the evidence of record, the ALJ determined that plaintiff had mild to moderate bulging of the lumbosacral spine at L4–5. He did not, however, have an impairment or combination of impairments that either met or equaled those listed in 20 C.F.R. Part 404, Subpt. P, App. 1, the Listing of Impairments. The ALJ then determined that plaintiff had the residual functional capacity to perform the exertional and nonexertional requirements of work except for lifting and carrying more than 10 pounds maximum, and two to three pounds frequently. Plaintiff also required a sit/stand option. This residual functional capacity precluded the performance of his past relevant work. Utilizing vocational expert testimony, the ALJ held that plaintiff could perform the jobs of surveillance system monitor, information clerk, cafeteria food checker, and electronics assembler which existed in significant numbers in the local and national economies. Substantial evidence supports the ALJ's decision that plaintiff was not disabled before December 31, 1990, the date his insured status expired.

■ The ALJ's decision is consistent with the standard for evaluating pain and other subjective complaints set forth in *Polaski v. Heckler*, 739 F.2d 1320 (order), *supplemented*, 751 F.2d 943 (8th Cir.1984). In *Polaski*, the court set forth factors that must be considered in evaluating subjective complaints. An ALJ must consider, in addition to objective medical evidence and the plaintiff's work record, any evidence relating to plaintiff's daily activities; duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. *Polaski v. Heckler*, 739 F.2d at 1322.

■ The medical evidence of record failed to reveal a condition which could reasonably be expected to produce the disabling pain and limitation plaintiff claimed. *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir.1990). Medical findings and signs established by medically acceptable clinical and diagnostic techniques must show the existence of a medical impairment which could reasonably be expected to produce the degree of functional loss or pain alleged. *Herbert v. Heck-*

*ler*, 783 F.2d 128, 130 (8th Cir.1989). Although plaintiff has complained of back problems, groin pain, prostate problems, and frequent urination, he received minimal medical treatment from August 1988 to December 1990 for these allegedly disabling conditions. Additionally, when he was seen by physicians, he was managed conservatively. Allegations of a disabling impairment may be properly discounted because of inconsistencies such as minimal or conservative medical treatment. *Barrett v. Shalala*, 38 F.3d 1019, 1023–24 (8th Cir.1994).

Furthermore, according to Dr. Cashman, plaintiff's neurologist and orthopedist stated that there were no objective findings to support his subjective complaints. Dr. Cashman agreed, stating that objective findings were few and far between. Dr. Whitaker also stated that neurological, urological, internal, and orthopedic examinations have not produced any objective findings. This lack of objective medical evidence, therefore, is a factor which does not support plaintiff's allegations of constant disabling pain and limitation.

■ The ALJ properly gave little weight to the chiropractor's treatment notes. Chiropractic opinions are not an "acceptable source" of medical information to prove disability. These opinions may be used only to show how an impairment affects a claimant's ability to work. *Cronkhite v. Sullivan*, 935 F.2d 133, 134 (8th Cir.1991); 20 C.F.R. § 404.1513. The notes from the chiropractor document dates of treatment but provide little information concerning how plaintiff's ability to work is affected. Dr. Foster's medical notes also do not support plaintiff's claims. In March 1987, Dr. Foster said plaintiff's urinary frequency was good. Despite some increase in frequency after plaintiff stopped taking medication in June 1987, plaintiff's urethra was normal on July 1, 1987. Plaintiff's pain was gone by July 8, 1987.

■ Dr. Miller and Dr. Belson stated during consultative examinations that plaintiff was incapable of working. However, the opinion of a consulting physician who examined the claimant once does not constitute

"substantial evidence" upon the record as a whole, especially when contradicted by a treating physician's opinion. *Onstead v. Sullivan,* 962 F.2d at 805. Plaintiff's treating physician, Dr. Cashman, opined that plaintiff should avoid one time lifting of 50 pounds and repetitive lifting of more than 25 pounds. Dr. Cashman also said plaintiff should avoid bending and twisting. Dr. Cashman did not opine that plaintiff was incapable of performing substantial gainful activity. Dr. Whitaker, another treating physician, opined that plaintiff could be gainfully employed. The only restriction he placed on plaintiff was to avoid twisting. As treating physicians, Dr. Cashman and Dr. Whitaker's opinions concerning plaintiff's physical limitations are entitled to substantial weight. *Clark v. Chater,* 75 F.3d 414, 417 (8th Cir.1996).

Contrary to plaintiff's assertion, it was neither "incompatible" nor "irrational" for the ALJ to find plaintiff to have a "severe" impairment and to need to alternate between sitting and standing, yet disbelieve his alleged need to lie down during the day. No physician stated lying down was a medical necessity. If plaintiff was not lying down out of medical necessity, then that indicates that he was lying down by choice. *See Schroder v. Sullivan,* 796 F.Supp. 1265, 1270 (W.D.Mo. 1992).

 Plaintiff contends that he cannot afford medical treatment or medication. Financial problems, however, are not always an excuse for failing to follow a treatment plan. *Brown v. Heckler,* 767 F.2d 451, 453 n. 2 (8th Cir.1985). The record does not indicate that plaintiff attempted to secure low-cost medical care. Assertions of lack of financial resources are not convincing where plaintiff made no effort to take advantage of any available medical assistance programs. *Johnson v. Bowen,* 866 F.2d 274, 275 (8th Cir.1989). Plaintiff has not attempted to obtain Medicaid or other financial assistance and he has not discussed alternative methods of payment with his physician. Also, there is no evidence that plaintiff was denied medical care because of his financial condition. Plaintiff's alleged financial problems, therefore, are not an acceptable reason for his refusal to seek medical assistance.

 Plaintiff testified that he took aspirin and Extra Strength Tylenol for his pain. Use of only over-the-counter medication contradicts complaints of disabling pain and limitation. *Walker v. Shalala,* 993 F.2d 630 (8th Cir.1993); *Starr v. Sullivan,* 981 F.2d 1006 (8th Cir.1992). He testified that he had taken Flexeril for up to one week each month, but could not afford the medication. Plaintiff claimed that Flexeril caused grogginess and impaired his concentration; however, there was no record that he reported these side effects to his physicians. If these side-effects were seriously impairing his functioning, it is reasonable to assume that he would have informed his physician so that adjustments could be made in the medication. *See Hajek v. Shalala,* 30 F.3d 89, 92 (8th Cir. 1994); *Richmond v. Shalala,* 23 F.3d at 1443.

 Plaintiff's wife testified on his behalf regarding the duration, frequency, and intensity of his pain and other subjective complaints. She testified that plaintiff had trouble lifting, was irritable, urinated frequently, needed assistance when dressing, did little driving, and would lie down frequently. The Commissioner is required to consider this evidence, she is not, however, required to believe it. *Ownbey v. Shalala,* 5 F.3d 342, 345 (8th Cir.1993); *Trenary v. Bowen,* 898 F.2d at 1364–65. The ALJ specifically addressed the testimony of plaintiff's wife and found it not credible because it was inconsistent with the medical evidence, plaintiff's minimal medical treatment, and the reports of treating and examining physicians. If an ALJ explicitly discredits testimony at an administrative hearing and gives a good reason for doing so, the court will defer to the ALJ's judgment. *Robinson v. Sullivan,* 956 F.2d 836, 839 (8th Cir.1992); *Ghant v. Bowen,* 930 F.2d 633, 637 (8th Cir.1991).

 The ALJ properly determined that, based upon the evidence of record, plaintiff could perform other work, and was therefore not disabled. Vocational expert testimony supported this conclusion. Plaintiff contends that the hypothetical question failed to include all of his limitations. Plaintiff's contention is erroneous. It is well established that a proper hypothetical question

is sufficient if it sets forth the impairments which are accepted as true by the ALJ. *House v. Shalala,* 34 F.3d 691, 694 (8th Cir. 1994); *Rappoport v. Sullivan,* 942 F.2d 1320, 1323 (8th Cir.1991). The hypothetical question properly included only those restrictions found credible by the ALJ. *See Rappoport,* 942 F.2d at 1323–24. Based on the properly formulated hypothetical question posed by the ALJ, the expert testified that plaintiff could perform jobs as a surveillance system monitor, information clerk, cafeteria food checker, and electronics assembler. These jobs existed in significant numbers in the national economy. Plaintiff argues that the vocational expert did not identify a significant number of jobs that he could perform. Plaintiff's argument is baseless. The Commissioner is only required to show that the jobs which plaintiff is capable of performing exist in significant numbers in the national economy, not the region where plaintiff lives. *See Janka v. Secretary of HEW,* 589 F.2d 365, 370 (8th Cir.1978); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566. The jobs cited by the vocational expert, however, existed in significant numbers in the national *and* local economies. There were 5,230 jobs in Missouri and 196,500 jobs in the United States which plaintiff was capable of performing. Because the hypothetical at issue included those impairments the ALJ found credible and excluded those discredited for legally sufficient reasons, the Commissioner met her burden of showing that plaintiff can perform other work that exists in significant numbers in the national economy. *Id.; Andres v. Bowen,* 870 F.2d 453, 455–56 (8th Cir.1989).

Substantial evidence on the record as a whole supports the Commissioner's decision that plaintiff failed to prove that he was "disabled" within the meaning of the Social Security Act at any time on or before December 31, 1990, the date when plaintiff last met the earnings requirement for insured status. Accordingly, it is ORDERED that defendant's motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED.